Cheryl A. GILE, Plaintiff–Appellant,

v.

UNITED AIRLINES, INCORPORATED,
Defendant–Appellee.

No. 95–3432.

United States Court of Appeals,
Seventh Circuit.

Argued March 27, 1996.

Decided Sept. 4, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 21, 1996.

---

Stephen G. Katz (argued), Katz & Buhai, Barrington, IL, for Plaintiff-Appellant.

Roger L. Taylor, Elli Leibenstein (argued), Kirkland & Ellis, Chicago, IL, for Defendant-Appellee.

Before EASTERBROOK, KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Cheryl Gile sued United Airlines, Inc., alleging that United discriminated against her in violation of the Americans with Disabilities Act when it failed to reassign her to a position on the day or afternoon shift after her disability made her unable to work on the night shift. In discovery, Gile requested documents pertaining to all United job vacancies in the Chicago metropolitan area. The district court limited her request to vacancies for the same position in the department where she had worked and to positions to which she had previously requested transfer. The district court subsequently granted summary judgment in favor of United on the ground that United could not possibly have reasonably accommodated Gile because Gile could not show that there was a suitable vacant position to which United could have transferred her. Gile appeals the discovery order and the grant of summary judgment. Because we find that the district judge imposed an overly narrow restriction on the scope of Gile's document request, we vacate the judgment and remand the case for further discovery.

## I

In March 1984, United hired Gile as a data-entry operator in its Air Freight Department at O'Hare International Airport in Chicago. Over the years, United transferred Gile several times between the day and night data-entry shifts. In January 1989, she was

transferred to the night shift for the last time.

Gile experienced multiple problems while assigned to the night shift, including daytime insomnia, fatigue, and falling asleep in her car on her way to and from work. Gile's problems progressed until some point in 1992 when they blossomed into depression. She began seeing a licensed social worker in May 1992, and the social worker diagnosed Gile as suffering from a "depressive reaction in anxiety state exacerbated with sleep disorder."[1] The social worker told Gile that her assignment to the night shift was aggravating her mental condition.

Gile informed United of her disability for the first time on August 28, 1992. The next day Gile requested and received a medical leave of absence. On September 29, 1992, the social worker faxed a letter to United explaining her opinion that Gile's depression was related to working the night shift and requesting that United consider changing Gile's shift. While on medical leave, Gile was examined by United's in-house flight surgeon, Dr. McGuffin. Gile told Dr. McGuffin during her second visit that she wanted to return to work, but that she could not work the night shift. In addition, she said, "I'm more than happy to take a lateral move. I'll go anywhere. I don't care what department it is." Gile was subsequently placed on an unpaid authorized leave. She returned to work at United as a data-entry operator on the afternoon shift in April 1994, and she remains employed with United.

On March 18, 1994, Gile filed a complaint against United alleging that United discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, when it failed to reasonably accommodate her after she informed United of her depression and her inability to work the night shift. As part of her discovery, Gile served United with a request for the production of documents under FED. R. CIV. P. 34. Among other things, Gile requested:

7. Any and all vacancy notices, newspaper advertisements, and similar documents used to advertise and/or post vacant positions within the Defendant's Metropolitan Chicago area facilities since September 1, 1992.

8. Any and all position descriptions or other documents which set forth the duties, functions, and responsibilities of any vacant positions which were open and/or filled by the Defendant in its Chicago Metropolitan area facilities since September 1, 1992.

United objected to these two requests and responded by producing documents relating only to vacancies in dataentry positions in the Cargo Services Department (of which there were none on the day or afternoon shifts), as well as documents relating to vacancies in three positions to which Gile had previously requested transfer.

Gile filed a motion to compel production of the requested documents under FED. R. CIV. P. 37(a). Gile did not attempt to narrow the breadth of her document request. Instead, she argued that all of the documents she requested were potentially relevant because the issue as to whether United could have accommodated her disability by transferring her to a vacant position would likely arise during the lawsuit. She explained, "The Plaintiff will be precluded from rebutting any contentions made by the Defendant that no vacancy existed for which Plaintiff could be transferred as a reasonable accommodation if Defendant is allowed to withhold the aforementioned information."

United responded that it was not required to produce all of the documents requested because they exceeded the scope of information discoverable under FED. R. CIV. P. 26(b)(1). United argued that it was only required to produce documents specifically relating to data-entry positions in the Cargo Services Department and that it voluntarily provided the information regarding the positions to which Gile had previously requested transfer. United argued that Gile was not entitled to discovery regarding any other positions because she may not have been

---

1. We note that the disability diagnosis and work-altering recommendation was provided by a social worker. However, the posture of the case does not provide us with the opportunity to explore the potential ramifications of Gile's reliance upon the social worker's diagnosis.

qualified for those positions, she may not have accepted an offer to transfer to one of those positions, and some of those positions were on the night shift. In passing, United noted that Gile's request was amazingly broad, so much so that it even included information regarding United's position of chief executive officer. At the conclusion of the hearing on the motion to compel, the district court stated: "I'm not compelling anything beyond what they voluntarily produced essentially for the reasons they stated in their response."

United subsequently filed a motion for summary judgment, arguing that there was no genuine issue concerning whether United could have accommodated Gile's disability because no vacancies existed to which United could have transferred her. Gile responded that United could have either (1) bumped another employee from the day shift to accommodate her, (2) placed her on the day shift without bumping another employee, or (3) assigned her to a different, day-shift position. Gile also argued that United had previously accommodated other disabled employees by bumping nondisabled employees.

The district court granted the motion for summary judgment, finding no genuine issue as to the fact that United could not reasonably have accommodated Gile's disability. The district court found that "bumping" another employee is not a reasonable accommodation under the ADA. The district court also recognized that although an employer may reasonably accommodate an employee by transferring the employee to a vacant position, Gile had offered no proof that there was a vacant position to which she could have been transferred. Finally, the district court disregarded Gile's arguments regarding prior accommodations of other employees because her evidence was in the form of inadmissible hearsay.

Gile appeals both the denial of her motion to compel discovery and the grant of United's motion for summary judgment.

## II

### A

■ A district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes. For that reason, we review a district court's discovery determinations for an abuse of discretion. *Searls v. Glasser,* 64 F.3d 1061, 1068 (7th Cir.1995); *Jurcev v. Central Community Hosp.,* 7 F.3d 618, 627 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994). We will not find that a district court abused its discretion unless one or more of the following circumstances is present: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary. *Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 977 (Fed.Cir.1993). In addition to according substantial deference to the district court's discovery decisions, we will not reverse a decision to limit discovery "absent a clear showing that the denial of discovery resulted in actual and substantial prejudice to the complaining litigant." *Searls,* 64 F.3d at 1068.

### B

Rule 34 provides that a party may request, among other things, the production of documents that "constitute or contain matters within the scope of Rule 26(b)" and are in the custody or control of another party. FED. R. CIV. P. 34(a). Rule 26(b) prescribes the scope of matters upon which a party may seek discovery: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

■ The party from whom the documents are requested must provide the documents or state a specific objection. FED. R. CIV. P. 34(b). Where the party from whom the documents are requested objects to the request, the party seeking the request may move for an order to compel production. *Id.* The

district court exercises significant discretion in ruling on a motion to compel. The district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case. FED. R. CIV. P. 37(a)(4)(B), (C). Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties. *See, e.g., Spears v. City of Indianapolis,* 74 F.3d 153, 158 (7th Cir.1996).

### III

The issue in this case is to what extent United was potentially obligated to reassign Gile to a different position when, as a result of her disability, she could no longer perform the essential functions of her job. In limiting Gile's document request on relevancy grounds, the district court must have concluded that the ADA requires only that an employer reassign a disabled employee to the same position on a different shift or to a position to which the employee had previously requested transfer.

The Americans with Disabilities Act defines discrimination, in part, as

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity....

42 U.S.C. § 12112(b)(5)(A).

The ADA proscribes discrimination against only "qualified individual[s] with a disability." 42 U.S.C. § 12112(a); *see also Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 563 (7th Cir.1996). Thus, the ADA only protects "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(9).

The parties do not dispute that absent accommodation Gile was unable to perform the essential functions of her position as a night shift data-entry operator. Nor do the parties dispute that United could not have accommodated Gile so as to enable her to perform the essential functions of her position as a data-entry operator on the night shift. Gile simply could not work nights as a result of her disability. The only accommodation that would have allowed her to continue working for United was reassignment to a day or afternoon shift data-entry position or to a different type of position on the day or afternoon shift.

United argues that the ADA does not obligate an employer to reassign an employee to a different type of position where the employee, with or without reasonable accommodation, can no longer perform the essential functions of the job she currently holds. According to United, where an employer cannot reasonably accommodate an employee so that the employee is able to perform the essential functions of her current job, that employee is not a *"qualified* individual with a disability," and the employer is not required to reassign her to a different type of position. Gile falls within this class of unprotected employees because she could perform the essential functions of her data-entry job only if she were transferred to a day or afternoon data-entry position and no day or afternoon data-entry positions were available.

■ In support of its argument that an employer is not required to reassign an employee incapable of performing the essential functions of her current job, United relies heavily upon precedent under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Decisions applying the Rehabilitation Act provide useful guidance in interpreting and applying the ADA when the language of the two statutes are substantially similar. *See Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 932–33 (7th Cir.1995). Significantly, United relies upon cases interpreting text that differed from, but has since been amended to parallel, the ADA.

Until recently, the Rehabilitation Act and its regulations did not include reassignment to a vacant position within the list of poten-

tial reasonable accommodations. *See* 29 U.S.C. §§ 791, 794; 29 C.F.R. § 1613.704. Under the earlier version, courts addressing an employer's obligation to reasonably accommodate a handicapped employee under the Rehabilitation Act held that an employer was not obligated to accommodate an employee by transferring or reassigning the employee to a different position where the employee could not perform the essential functions of the position he then held. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987); *Guillot v. Garrett*, 970 F.2d 1320, 1326 (4th Cir.1992); *see also Fedro v. Reno*, 21 F.3d 1391, 1395 (7th Cir. 1994) (noting the previous state of the law and citing cases).

In 1992, Congress amended the Rehabilitation Act to provide that the standards for determining what constitutes employment discrimination "shall be the standards applied under Title I of the Americans with Disabilities Act." Act of October 29, 1992, Pub.L. No. 102–569, Title V, § 506, 106 Stat. 4360, 4428. Thus, the Rehabilitation Act incorporates the ADA's definition of reasonable accommodation, which recognizes reassignment to a vacant position as a potential accommodation required under the ADA:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individual with disabilities.

42 U.S.C. § 12111(9)(B).

Except for limiting an employer's obligation to reassign a disabled employee to a vacant position, neither the statute nor the regulations provide much guidance for determining under what circumstances and to what extent an employer may be obligated to reassign a disabled employee (i.e., whether an employer may be required to consider transferring the employee to a similar position in the same office or department, a similar position in a different office or department, or a different type of position whether in the same or different office or department).

The EEOC's interpretive guidance, which is located in an appendix to the regulations, provides more useful detail:

> In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship.... Reassignment may not be used to limit, segregate, or otherwise discriminate against employees with disabilities by forcing reassignments to undesirable positions or to designated offices or facilities. Employers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time.... An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation.

29 C.F.R. app., § 1630.2(*o*). In looking to the EEOC's interpretive guidance, we remain mindful of the Supreme Court's instruction regarding its persuasive weight: "As an 'administrative interpretation of the Act by the enforcing agency,' these Guidelines, 'while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort to guidance.'" *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (quoting *General Elec. Co. v. Gilbert*, 429 U.S. 125, 141–42, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976), and *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971)) (citation omitted).

In addition to setting forth a step-by-step approach to reassignment as accommodation, the EEOC's guidance broadly prescribes the scope of an employer's potential obligation to reassign an otherwise qualified individual with a disability. First, by noting that reassignment to equivalent positions is preferable and reassignment to lower graded positions is permissible, the EEOC's guidance implies

that reasonable accommodation may require reassignment to a position wholly distinct and different from the one the disabled employee previously held. Second, by discussing reassignment to different offices and facilities, the EEOC's guidance implies that reasonable accommodation may also include reassignment outside of the particular department, office, or facility in which the employee previously worked.

Unlike the regulations under the Rehabilitation Act,[2] neither the regulations under the ADA nor the interpretive guidance explicitly state that an employer may be obligated to accommodate a disabled employee by transferring the employee to a different position when the employee can no longer perform the essential functions of their current position. But such an obligation may reasonably be inferred from the statement that "reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship." 29 C.F.R. app., § 1630.2(*o*). In other words, an employer may be obligated to reassign a disabled employee only when, even with reasonable accommodation, the employee can no longer perform the essential functions of his present job. Significantly, that is the same interpretation contained in the ADA's legislative history.

> Reasonable accommodation may also include reassignment to a vacant position. If an employee, because of his disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and the employer from losing a valuable worker.

H.R. REP. No. 485(II), 101st Cong., 2d Sess. (1990), U.S.Code Cong. & Admin.News 1990, p. 267.

Even though the ADA seems to provide that an employer may be obligated to accommodate a disabled employee unable to perform the essential functions of his current job by transferring the employee to a different position, the courts which have addressed the question have not necessarily reached that conclusion.

Those courts which have found that reassignment to a different position cannot be a reasonable accommodation under the ADA mistakenly rely upon preamendment Rehabilitation Act cases stating that proposition under the Rehabilitation Act. *See Myers v. Hose,* 50 F.3d 278, 284 (4th Cir.1995) (citing *Guillot,* 970 F.2d at 1326); *Cheatwood v. Roanoke Indus.,* 891 F.Supp. 1528, 1537 (N.D.Ala.1995) (citing *Myers,* 50 F.3d at 284).

The other courts that have addressed the question recognized that under the ADA an employer may be obligated to transfer an employee to a different position where the employee can no longer perform the essential functions of the position he currently holds. *See Shiring v. Runyon,* 90 F.3d 827, 832 (3d Cir.1996) (Rehabilitation Act); *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1114 (8th Cir.1995); *Haysman v. Food Lion, Inc.,* 893 F.Supp. 1092, 1104 (S.D.Ga.1995); *Pedigo v. P.A.M. Transp., Inc.,* 891 F.Supp. 482, 485–87 (W.D.Ark.1994); *Vazquez v. Bedsole,* 888 F.Supp. 727, 731 (E.D.N.C.1995); *Emrick v. Libbey–Owens–Ford Co.,* 875 F.Supp. 393, 397 (E.D.Tex.1995).

■ Our review of the ADA, its regulations, and the EEOC's interpretive guidance leads us to the conclusion of the majority of courts that have addressed the issue that the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of their current position. After

**2.** The regulations under the Rehabilitation Act were also amended in 1992, and they now make explicit and expansive reference to a federal employer's obligation to reassign an otherwise qualified handicapped employee.

> When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade or level, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program.
>
> 29 C.F.R. § 1614.203(g).

stating what appears to be a very broad rule, we feel it is prudent to emphasize that, along with the other requirements a disabled employee must meet under the ADA to be entitled to reasonable accommodation, there are significant limitations on an employer's potential obligation to reassign a disabled employee as reasonable accommodation.

■ An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation. *Schmidt v. Methodist Hospital,* 89 F.3d 342, 344–45 (7th Cir.1996). Thus, when an employee requests a transfer as reasonable accommodation and the employer offers alternative reasonable accommodation, which the employee then refuses, the employer cannot be liable for failing to reasonably accommodate the employee by not transferring him to another position. *Id.*

■ The ADA may only require an employer to reassign a disabled employee to a position for which the employee is otherwise qualified. *White v. York Int'l Corp.,* 45 F.3d 357, 362 (10th Cir.1995). An employer may be obligated to reassign a disabled employee, but only to vacant positions; an employer is not required to "bump" other employees to create a vacancy so as to be able to reassign the disabled employee. *Id.* Nor is an employer obligated to create a "new" position for the disabled employee. *Fedro,* 21 F.3d at 1396. Furthermore, in order for an employer to be obligated to accommodate an employee by reassigning them to a different position, that accommodation must not impose an "undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A).

Our discussion above reveals that the district court based its decision to limit Gile's document request upon the erroneous conclusion of law that the requested documents were not relevant because United was only obligated to reassign Gile to a position inside her department or to a position to which she had previously requested transfer. As a result, we conclude that the district court abused its discretion in so limiting Gile's document request.

## IV

As noted above, we will not reverse a judgment on the grounds that a district court improperly limited discovery unless the party makes "a clear showing that the denial of discovery resulted in actual and substantial prejudice to the complaining litigant." *Searls,* 64 F.3d at 1068 (citing *Jurcev,* 7 F.3d at 627). Gile has successfully made that showing here. The district court granted summary judgment in favor of United on the ground that Gile had not shown that United could have possibly reasonably accommodated her because she could not produce evidence regarding any vacancies for which she qualified and to which United could have reassigned her. The overly restrictive limitation on Gile's discovery precluded her from making the showing necessary to defeat summary judgment. For this reason, Gile prevails on her challenge to the district court's discovery order.

Our conclusion that the district court erred in the extent to which it limited Gile's document request does not preclude the district court from revisiting the proper scope of that request on remand. The district court exercises significant discretion in determining the proper scope of discovery, and the court may, being informed by our opinion in this case, prescribe a different limit to the scope of the request, whether on relevancy grounds under Rule 26(b)(1) or another ground articulated in Rule 26(b)(2).

For the foregoing reasons the judgment of the district court is VACATED and the case REMANDED for further proceedings consistent with this opinion.