**Michael J. SCHEER, Plaintiff,**

v.

**CITY OF CEDAR RAPIDS and City of Cedar Rapids Airport Department, Defendants.**

· **No. C 95–0239.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

Feb. 28, 1997.

Mark John Seidl, Cedar Rapids, IA, Leslie E. Stokke, Cedar Rapids, IA, for Michael J. Scheer.

James H. Flitz, Cedar Rapids Attorney's Office, Cedar Rapids, IA, for City of Cedar Rapids and City of Cedar Rapids Airport Com'n.

JARVEY, United States Chief Magistrate Judge.

### ORDER

This matter comes before the court pursuant to the defendants' January 14, 1997, motion for summary judgment. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). By order dated January 11, 1996, this matter was referred to the undersigned United States Magistrate Judge for disposition on the merits. The defendants' motion for summary judgment is granted.

The plaintiff brings this action under the Americans With Disabilities Act (ADA) contending that he was terminated from his position as an Airport Safety Officer (ASO) with the Cedar Rapids Airport Commission because of his disability. The plaintiff suffers from epilepsy. This condition was disclosed to the defendants in May of 1992. His employment was terminated on November 15, 1992. The defendants move for summary judgment contending that the plaintiff's request for an indefinite leave of absence is not a reasonable accommodation under the ADA and that the plaintiff was offered another position which the plaintiff first accepted and then rejected. The defendants contend, as a matter of law, that the alternative position offered to the plaintiff was a reasonable accommodation under the ADA.

### Summary Judgment

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no

genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Fed. R.Civ.P.* 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir.1987), *cert. denied*, 484 U.S. 1014, 108 S.Ct. 718, 98 L.Ed.2d 668 (1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986) (quoting *Impro Prod., Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)).

In the context of employment discrimination cases, summary judgment should be used sparingly. *Hardin v. Hussmann*, 45 F.3d 262, 264 (8th Cir.1995) (citations omitted). "'Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.'" *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford v. Runyon*, 37 F.3d 1338, 1340 (8th Cir.1994)). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987).

### Statement Of Material Facts Not In Dispute

Plaintiff Michael J. Scheer was employed at the Cedar Rapids Airport from October 13, 1986, until November 15, 1992. From June 23, 1987, until his employment ended, plaintiff held the position of Airport Safety Officer.

The defendants first learned of plaintiff's epilepsy in May of 1992. The plaintiff worked until May 12, 1992. On May 15, 1992, the defendants were informed by plaintiff's physician that he was being evaluated for black-out spells and that he was unable to drive. On July 7, 1992, the Cedar Rapids Municipal Airport received a letter from the plaintiff's physician advising that he could not drive again until his seizures had been controlled for a period of six months. This is consistent with Rule 600.4(4) of the Iowa Department of Transportation Administrative Rules which prohibits a person who suffers from epilepsy from being issued a driver's license until that person has been episode-free for six months.

Plaintiff used accrued sick leave from May 15, 1992, until August 5, 1992. He was then placed on an unpaid leave of absence [1] that ended November 15, 1992. Other Airport Security Officers covered for the plaintiff during his leave and were paid overtime wages in the amount of more than $5,000 as a result of plaintiff's absence from work.

An Airport Safety Officer is a peace officer who receives law enforcement certification through an approved law enforcement academy. The job requires the officer to be proficient in all phases of crash/fire/rescue functions related to civil aviation and be familiar with structural firefighting. An ASO is also trained in emergency medical service as a "first responder." Among the essential functions of the ASO position is driving. An ASO must be able to drive a number of highly specialized vehicles such as a patrol squad car, a utility vehicle equipped to evaluate runway conditions, a three-quarter ton truck-like first-responder emergency vehicle equipped with dry chemical fire suppression material and a large firefighting truck.

The Cedar Rapids Municipal Airport is approximately 3,000 acres in size with more

---

1. The Airport Commission resolution called it a long term disability.

than two dozen separate building locations. It is owned by the City of Cedar Rapids and operated by the Cedar Rapids Airport Commission. The airport has a safety division consisting of eleven employees. It has one safety supervisor, one senior safety officer, and nine ASOs. The ASOs are assigned to three shifts. Each ASO operates independently. During the third shift (in the night), only one ASO is on duty.

A position as a Terminal Maintenance Worker (TMW) became vacant at the airport on August 3, 1992. Plaintiff was qualified for this position having performed a similar position before becoming an ASO. On September 10, 1992, plaintiff's attorney, James W. Affeldt, sent a letter to Cedar Rapids Commissioner J.D. Smith. He stated that he believed two TMW positions were open, that the plaintiff was qualified for the positions, and that the plaintiff was willing to accept one of them as an accommodation of his disability.

On October 6, 1992, Lora Summerwill, the Director of Employee Safety and Health Services for Cedar Rapids, sent a letter to plaintiff's physician indicating that the plaintiff requested accommodation in the TMW position including not driving and not working alone on third shift. Ms. Summerwill stated that the driving restriction could be accommodated and that the maintenance work could be performed either alongside another employee or with the plaintiff wearing a beeper to alert security if he sensed an imminent problem. She requested a letter from plaintiff's physician specifically outlining his restrictions and their expected duration.

By letter dated October 8, 1992, plaintiff's physician responded stating that the plaintiff's seizure disorder was not under control as the plaintiff had only been on medication since July of 1992. The physician stated that plaintiff could not work at significant heights, around dangerous equipment, or around caustic materials. He could not work alone. She further stated that simply wearing a beeper would not be satisfactory at that time. Again, she stated that he could not drive

until he was seizure-free for a period of six months. He had a seizure in September 1992.

On October 15, 1992, the position of TMW was offered to the plaintiff. The defendants waived the requirements concerning driving and operating heavy equipment. Provisions were made for radio communications[2] with coworkers to preclude the dangers of working alone and the plaintiff was not required to work at heights or with caustic materials. The TMW position paid less than the ASO position. He would have had to accept the TMW position as a new, probationary employee.

On November 2, 1992, the defendants received a letter from the plaintiff indicating that he did not wish to take the position of TMW. He gave no reasons for this refusal other than to say that he would return to his position as ASO on March 8, 1993. However, the evidence is undisputed that there was absolutely no assurance that the plaintiff would actually be able to return to his former position in March 1993 because of the unpredictability of his seizures. In the November 2, 1992 letter, plaintiff did not complain that the October 15, 1992 offer of the TMW failed to address his need for accommodation in that position.

In the fall of 1992 and at all other times relevant herein, the Airport Safety Officers at the Cedar Rapids Airport were represented by the Cedar Rapids Municipal Airport Professional Firefighters Association, Local 2607. The Terminal Maintenance Workers were represented by the Chauffeurs, Teamsters and Helpers Local Union 238. Pursuant to the Labor Agreement which was negotiated between Local 2607 and the airport in effect from July 1, 1992 until June 30, 1996, job assignments such as shift assignments were made pursuant to seniority. At all relevant time periods, Airport Safety Officers with more seniority than the plaintiff were assigned to the first shift.

In retrospect, plaintiff contends that he could have been accommodated by leaving

---

**2.** This was different than the beeper. His physician testified at her deposition that this would have been satisfactory, at least looking at it with hindsight. The plaintiff was not required to be guarded 24 hours per day and was able to be left alone at home.

him in the ASO position, assigning him to the first shift and allowing him to do only office work. He never made this demand in 1992. Furthermore, to assign the plaintiff to an ASO position on the first shift would have necessitated "bumping" a more senior ASO to another shift.

## CONCLUSIONS OF LAW

A plaintiff seeking relief under the ADA must establish that he is a disabled person within the meaning of the ADA, that he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and that he was terminated because of his disability. *Wooten v. Farmland Foods,* 58 F.3d 382 (8th Cir.1995). Once the plaintiff makes a facial showing that reasonable accommodation is possible, the burden of production shifts to the employer to show that it is unable to accommodate the employee. If the employer shows that the employee cannot perform the essential functions of the job even with reasonable accommodation, the employee must rebut that showing with evidence of his individual capabilities. At that point, the employee's burden merges with his ultimate burden of persuading the trier-of-fact that he has suffered unlawful discrimination. *Benson v. Northwest Airlines,* 62 F.3d 1108, 1112 (8th Cir. 1995).

In this case, the court has identified the following important issues for the resolution of the defendants' motion for summary judgment.

*First,* when an employer learns of an employee's disability, whose burden is it to propose reasonable accommodation?

*Second,* can an employer be required to place an employee on an indefinite leave of absence to accommodate a disability of unknown duration?

*Third,* can an employer be required to create a position by selecting the functions of a job that the disabled employee can perform with or without accommodation?

*Finally,* can an employer be required to accommodate an employee with an accommodation that would violate the terms of a collective bargaining agreement? The court addresses these questions in turn.

*Whose Burden Is It To Propose Reasonable Accommodation?*

■ The general framework for the burden of proof at trial has been established by the Eighth Circuit Court of Appeals in *Wooten* and *Benson, supra.* However, to determine whether the employer was motivated at the time of termination by illegal disability animus, its actions should be judged as of the time of the employer's decision. The question is whether the plaintiff is limited to arguing for accommodations that were considered prior to termination or whether other reasonable accommodations can be considered with hindsight. The question is more easily raised than answered.

■ In general, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed. 29 C.F.R. § 1630.9 App. (1995), cited in *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 165 (5th Cir.1996). Once such a request has been made, the appropriate reasonable accommodation is best determined in a flexible, interactive process that involves both the employer and the qualified individual with the disability. 29 C.F.R. § 1630.9 App. (1995). In other words, once an accommodation is properly requested, the responsibility for fashioning a reasonable accommodation is shared between the employee and employer. *Id.* Thus, it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one. If the employee fails to request an accommodation, the employer cannot be liable for failing to provide one. *Taylor, supra,* at 165.

Even if the ADA does not require an employee to affirmatively request an accommodation, "the employee cannot expect the employer to read [her] mind and know [she] secretly wanted a particular accommodation and sue the employer for not providing it."

*Morton v. GTE North, Inc.,* 922 F.Supp. 1169, 1180 (N.D.Tex.1996) (citing *Schmidt v. Safeway, Inc.,* 864 F.Supp. 991, 997 (D.Or. 1994)).

■ An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation. *Gile v. United Airlines*, 95 F.3d 492, 499 (7th Cir.1996). Thus, when an employee requests a transfer as a reasonable accommodation and the employer offers alternative reasonable accommodation, which the employee then refuses, the employer cannot be liable for failing to reasonably accommodate the employee by not transferring him to another position. *Id.*

The term "accommodation" means that the employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work. *Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, 1135 (7th Cir.1995). In describing the relative burden between employer and employee, the Seventh Circuit stated in *Beck* that the employer has "at least some responsibility" in determining the necessary accommodation. The court further read the plain language of ADA regulations to require an interactive process that requires participation by both parties.

■ Most importantly, the court in *Beck* stated that no hard and fast rule will suffice for determining who is responsible when the interactive process fails. Neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. *Id.* Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. *Id. See also Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir.1996), and *Hunt–Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004 (7th Cir. 1997). Because he has first-hand knowledge of both his disability and his job, an employee has substantial responsibility for identifying the nature of a reasonable accommoda-

tion. *Feliberty v. Kemper Corp.*, 98 F.3d 274, 280 (7th Cir.1996).

It appears to the court that the interactive process described above worked fairly well until October 15, 1992. While the plaintiff was using his sick leave there appears to have been no discussion of accommodation. Within thirty days thereafter, however, plaintiff became aware of the TMW opening and had his lawyer send a letter demanding that position as an accommodation. Appropriate inquiries were then made from plaintiff's treating physician and the TMW position was offered to the plaintiff. In retrospect, the plaintiff complains that the October 15, 1992, offer did not satisfy all of his demands because the communication device was not an acceptable accommodation of his concerns about working alone. From the record, it appears that the plaintiff never responded to the offer other than to deny it by his November 2 letter. The plaintiff dropped the demand for the TMW position and simply demanded his old job back. Under these circumstances, the plaintiff's claim concerning accommodation in the TMW position has to be viewed with some skepticism. This is especially true in light of his physician's testimony that suggests that the October 15, 1992 accommodations were appropriate.

### Indefinite Leave As A Potential Accommodation

■ It is clear to this court that driving is an essential function of the ASO position. This is true for all three shifts. It is also clear that plaintiff could not drive until he had been seizure-free for six months and that he had his last seizure in September of 1992. Plaintiff's November 2 statement indicating that he could return to work on March 8, 1993, was speculative and unsupported by his own physician's medical opinion. He was therefore requesting, in essence, indefinite leave when he rejected the TMW position stating that he would return to the ASO position.

Four Circuit Courts of Appeals that have addressed the question have stated that the requirement of reasonable accommodation does not obligate an employer to place an

employee on indefinite leave. While employers may be required to transfer a disabled employee to a vacant position for which he or she is qualified, employers are under no duty to keep employees on unpaid leave indefinitely until such position opens up. *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1187 (6th Cir.1996).

The Fourth Circuit Court of Appeals, interpreting the definition of a disability in the ADA, found it significant that the statute contains no reference to an individual's *future* ability to perform the essential functions of his position. To the contrary, the statute is formulated entirely in the present tense, framing the precise issue as whether an individual "can" (not "will be able to") perform the job with reasonable accommodation. *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir. 1995). As the court stated:

> Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.

*Id.* at 283. *See also Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir.1996) ("While Rogers contends that IMT was required to accommodate him by allowing him to enjoy indefinite leave, this argument is meritless."). *See also Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1169 (10th Cir.1996) (Plaintiff failed to present any evidence of the expected duration of her impairment as of the date of her termination. The employer was not required to wait indefinitely for her recovery.). Thus, it is clear that the plaintiff's demand to retain his ASO position indefinitely was not a reasonable accommodation in light of the case law noted above and the overtime expense incurred by the city prior to November 15, 1992. And, as the Eighth Circuit Court of Appeals recently stated, the fact that the defendants offered the plaintiff another job which he turned down does nothing but strengthen the defendant's case. *Budd v.*

*ADT Security Systems, Inc.,* 103 F.3d 699, 700 (8th Cir.1996).

### *Restructuring of the ASO Position As A Possible Accommodation*

■ Plaintiff argues that on the first shift, ASOs did not work alone and that there was a sufficient amount of work such that plaintiff could have selected and performed those functions of the ASO position that take place in the office. He would always be with or near someone else and would not have to drive a vehicle. There are three problems with this demand for accommodation. First, no such position was open. Second, giving the plaintiff such a position would require the defendant to violate its collective bargaining agreement. Third, the request to perform only some of the essential functions of a job is not a request for reasonable accommodation.

Job restructuring is a possible accommodation under the ADA. 42 U.S.C. § 12111(9)(B). Restructuring frequently involves reallocating the *marginal* functions of a job. *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1112 (8th Cir.1995). An employer need not reallocate the essential functions of a job, which a qualified individual must perform. *Id.* The plaintiff has done nothing to rebut the affidavit of Lawrence K. Mullendore and the job description for an ASO attached to defendants' statement of materials facts filed January 14, 1997. The record unequivocally demonstrates that the essential functions of this job involve driving motor vehicles and being prepared to handle a wide variety of matters other than office work. These functions must be able to be performed alone.

An employer may be obligated to reassign a disabled employee, but only to vacant positions. An employer is not required to "bump" other employees to create a vacancy so as to be able to reassign the disabled employee. *Gile v. United Airlines,* 95 F.3d 492, 499 (7th Cir.1996). An employer is similarly not required to make accommodations that would violate the rights of other employees. An employer has no obligation to terminate other employees or violate a collective bargaining agreement in order to accommodate the disabled employee. *Wooten v.*

*Farmland Foods,* 58 F.3d 382, 386 (8th Cir. 1995). *See also Monette, supra,* at 1187 (employers are not required to create new positions for disabled employees in order to reasonably accommodate them).

The plaintiff alleges that the City accommodated an ASO supervisor named Captain Mark Ekstrom with light duty for some unspecified period. The court is not certain whether the plaintiff claims that this is evidence of disparate treatment or whether it shows that such accommodation is reasonable because the defendants have done it before. The plaintiff's argument should fail for two reasons. First, the plaintiff has not shown that he was similarly situated to this supervisor in terms of the nature of the position or the nature and length of the disabilities involved. Second, plaintiff is comparing two disabled persons rather than comparing a protected person to a nonprotected person. As such, the court could consider this evidence only on the issue of the reasonableness of light duty as an accommodation. Because of the dissimilarity of a supervisor's position to that of a regular ASO, this allegation does not support plaintiff's claim. That is, one would ordinarily expect that a supervisory position would be more easily accommodated with light duty.

For these reasons, the court finds that summary judgment must be granted in favor of the defendants.

Upon the foregoing,

IT IS ORDERED

The defendants' motion for summary judgment is granted. This case is dismissed. The Clerk of Court shall enter judgment accordingly.