**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICHAEL HOLLESTELLE,
Plaintiff-Appellant,

v.

METROPOLITAN WASHINGTON AIRPORTS
AUTHORITY,
Defendant-Appellee.

No. 97-1465

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-96-989-A)

Argued: December 1, 1997

Decided: May 8, 1998

Before ERVIN and HAMILTON, Circuit Judges, and
WILSON, Chief United States District Judge
for the Western District of Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Diana Johnson Veilleux, SHAW, BRANSFORD &
O'ROURKE, Washington, D.C., for Appellant. Morris Kletzkin,
FRIEDLANDER, MISLER, FRIEDLANDER, SLOAN & HERZ,
Washington, D.C., for Appellee. **ON BRIEF:** Christopher M. Okay,

Alicicia A. Simolunas, SHAW, BRANSFORD & O'ROURKE, Washington, D.C., for Appellant. Jerome Ostrov, Mark D. Crawford, Phillippa T. Gasnier, FRIEDLANDER, MISLER, FRIEDLANDER, SLOAN & HERZ, Washington, D.C.; Edward S. Faggen, Joseph E. Kalet, Office of Legal Counsel, METROPOLITAN WASHINGTON AIRPORTS AUTHORITY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Hollestelle appeals the entry of judgment as a matter of law for his employer, Metropolitan Washington Airports Authority ("the Authority") on his claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12111 et seq. ("ADA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Hollestelle claims that the Authority violated the ADA by failing to accommodate his depression when it discharged him for habitual tardiness and that the Authority violated Title VII by discharging him in retaliation for filing a charge of discrimination under the ADA. The district court concluded that Hollestelle could not perform the essential job function of arriving at work on time despite the fact that the Authority had reasonably accommodated him, and that the Authority discharged him for that tardiness. We fully agree and affirm.

I.

The Authority employed Hollestelle as a "property disposal technician" from May, 1988, until January, 1996. The position required Hollestelle to assist in the disposal of the Authority's excess property and to serve as the Authority's licensing agent for motor vehicle tags and licenses. Hollestelle consistently failed to arrive on time for work

2

during his employment with the Authority. In 1992, the Authority adjusted Hollestelle's hours twice in an effort to cure his tardiness and sent him a warning letter in February, 1993. Hollestelle continued to arrive late, however, and the Authority officially reprimanded him in June of 1993, following his forty-fourth late arrival since the February warning. Between the June 1993, reprimand and October 22, 1993, Hollestelle was late fifty more times.

Hollestelle's tardiness continued unabated, and on June 17, 1994, the Authority proposed a five day suspension because Hollestelle had been late ninety-six times since October 22, 1993. In response, Hollestelle notified the Authority that he was being treated for depression and that this condition was affecting his ability to arrive at work on time. The Authority then held disciplinary action in abeyance pending the receipt of medical information about Hollestelle's condition. Hollestelle's submitted medical documentation failed to address any connection between his depression and tardiness, however, and Hollestelle continued to arrive late after the proposed suspension. As a result, the Authority suspended Hollestelle for two days on August 17, 1994.

Hollestelle requested in January of 1995 that he be afforded a flexible starting time--a window of time in which to arrive at the beginning of the day--and that he be allowed to extend his workday accordingly in order to work his full shift. The Authority agreed in March of 1995 to allow Hollestelle a ten-minute window for reporting to work. Nevertheless, in April of 1995, Hollestelle filed a complaint with the Alexandria Office of Human Rights, alleging that the Authority had discriminated against him on the basis of his disability by disciplining him for his tardiness and by failing to accommodate him. That office subsequently transferred Hollestelle's complaint to the United States Equal Employment Opportunity Commission in September of 1995.

The Authority further modified Hollestelle's schedule in May of 1995 by expanding the flex-time window to fifteen minutes. Hollestelle's tardiness continued, however. He was late forty-two times

3

between May 12, 1995, and July 24, 1995, and his tardiness averaged twenty-seven minutes.**1**

As a last resort, the Authority informed Hollestelle on July 24, 1995, that it was changing his starting time from 8:15 A.M. to 9:30 A.M. in order to assist him in his efforts to "get into gear" in the morning and to arrive at work promptly. Again, Hollestelle was late no fewer than fifty-five times over the next sixty-six days. Having exhausted its options, the Authority discharged Hollestelle, effective January 12, 1996.

In the meantime, on September 19, 1995, the EEOC issued a determination in the matter, finding that there was reasonable cause to believe that the Authority had violated the ADA by failing to provide Hollestelle with a reasonable accommodation.**2** Conciliation efforts failed, and Hollestelle filed suit against the Authority on July 23, 1996. At the conclusion of Hollestelle's case-in-chief, the district court granted the Authority's motion for judgment as a matter of law on all of Hollestelle's claims, and this appeal ensued.

II.

Hollestelle first claims that the district court erred in granting the Authority's motion for judgment as a matter of law on his claim that the Authority wrongfully terminated him on the basis of his disability. We agree with the district court that Hollestelle could not perform the essential functions of his job, even with the Authority's reasonable accommodation. Hollestelle, therefore, was not a"qualified individual" under the ADA. Accordingly, we affirm the ruling of the district court.

_____

**1** At the Authority's request, Dr. Christopher Holland examined Hollestelle in May of 1995. Dr. Holland's report, submitted to the Authority in June of 1995, recommended that the Authority provide Hollestelle with a forty-five minute flex-time arrival period.

**2** Hollestelle states in his brief that the EEOC also issued a determination on May 12, 1996, in which it found reasonable cause to believe the Authority had discriminated against him. The record, however, contains only the determination dated September 9, 1995.

4

The ADA prohibits discrimination against "a qualified individual because of the disability of such individual." 42 U.S.C. § 12112(a). The statute defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In order to determine whether an employee is a "qualified individual" under the ADA, the court first must determine whether the employee can perform the essential functions of the job in question. Tyndall v. Nat'l Educ. Centers, Inc., 31 F.3d 209, 213 (4th Cir. 1994). The essential functions of a job are those "that bear more than a marginal relationship to the job at issue." Id. (quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1993)). If the person cannot perform these functions, the court next must decide whether a reasonable accommodation by the employer would have enabled the individual to do so. Id. Additionally, the "[p]laintiff bears the burden of demonstrating that [he] could perform the essential functions of [his] job with reasonable accommodation." Id. (citation omitted).

We held in Tyndall that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a `qualified' individual protected by the ADA." Id.  This conclusion is based on the common-sense notion that "an employee`who does not come to work cannot perform any of his job functions, essential or otherwise.'" Id. (quoting Wimbley v. Bolger, 642 F. Supp. 481, 485 (W.D. Tenn. 1986), aff'd, 831 F.2d 298 (6th Cir. 1987)); see also Halperin v. Abacus Tech. Corp., 128 F.3d 191, 199 (4th Cir. 1997) (finding that an employee was not a qualified individual under the ADA because his failure to come to work on a regular basis prevented him from performing "any of the functions of the job in question, much less the essential ones"). The notion that regular and predictable attendance is an essential function of almost every job finds ample support in the decisions of other courts. See, e.g., Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir. 1994) ("[A]n essential function of any government job is an ability to appear for work . . . ."); Law v. United States Postal Serv., 852 F.2d 1278, 1279-80 (Fed. Cir. 1988) ("[A]n agency is inherently entitled to require an employee to be present during scheduled work times and, unless an agency is notified in advance, an employee's absence is disruptive to the agency's efficient operation."); Walders v. Garrett, 765 F. Supp. 303, 310 (E.D. Va. 1991)

5

("What is clear . . . is that some degree of regular, predictable atten-
dance is fundamental to most jobs."), aff'd , 956 F.2d 1163 (4th Cir.
1993); see also Hypes v. First Commerce Corp. , 134 F.3d 721, 727
(5th Cir. 1998) (citing additional cases).

Hollestelle's work record at the Authority shows without any doubt
that he was unable to perform the essential function of arriving to
work on time throughout his employment. His consistent lateness
caused the Authority to adjust his hours twice in 1992 and to repri-
mand him in 1993. During the period from October 22, 1993, to June
17, 1994, alone, Hollestelle was late ninety-six times. From May 12,
1995, until July 24, 1995, a period during which Hollestelle had a
fifteen-minute arrival flex period, Hollestelle was late forty-two
times, and his tardiness averaged twenty-seven minutes. We com-
pletely agree with the district court, on the basis of this overwhelming
and uncontroverted evidence, that Hollestelle was unable to perform
the essential function of attending work in a regular and predictable
manner.**3**

We also readily conclude, as did the district court, that the Author-
ity reasonably accommodated Hollestelle and that, despite that

_____

**3** Hollestelle argues that, although he arrived late to work, he nonethe-
less eventually showed up and that his case, therefore, substantially dif-
fers from cases involving absenteeism. We are not persuaded.

Nor are we persuaded by his implicit argument that his employer over-
valued punctuality. The ADA provides that "consideration shall be given
to the employer's judgment as to what functions of a job are essential."
42 U.S.C. § 12111(8). Moreover, Hollestelle's tardiness impacted his
job. For example, in February of 1992, Hollestelle's supervisor wrote
Hollestelle:

> I have also discussed with you previously that I do not want the
> moving contractor sitting around waiting for you to arrive before
> they can begin to work. This has occurred several times as
> recently as the past couple of weeks because of your failure to
> follow through to ensure that you arrive on time. When this does
> occur the Authority has to pay for three or four movers while
> they sit around waiting for you to arrive for their daily assign-
> ment.

J.A. 402.

accommodation, Hollestelle failed to arrive at work on time. Indeed, we find the Authority's efforts to accommodate Hollestelle to be extraordinary. We reject the EEOC's contrary determination as wholly unfounded, if not corrosive to the ADA's policy of fostering reasonable accommodations. The Authority attempted to work with Hollestelle even before Hollestelle informed it of his alleged disability in mid-1994.[4] The Authority adjusted his work hours twice in 1992 and referred him to the company's Employee Assistance Program coordinator to address his tardiness. After Hollestelle claimed that his depression was the source of his lateness, the Authority attempted to work with him further. In response to his request for a flex-time arrival period, the Authority gave him a ten-minute window in which to arrive without being considered late. After he continued to be late, the Authority increased the flex-time period to fifteen minutes. Despite these changes, Hollestelle was late forty-two times between May and mid-July of 1995. The Authority, however, did not respond by discharging Hollestelle. It chose instead to work with him once again. In July of 1995, when Dr. Holland recommended that Hollestelle be given forty-five minutes of flex time, the Authority did more. It extended Hollestelle's starting time from 8:15 A.M. to 9:30 A.M., giving him seventy-five additional minutes to get to work on time. Yet, this effort failed as well, as Hollestelle was late no fewer than fifty-five out of sixty-six days following the seventy-five minute adjustment.[5] It follows that Hollestelle was not a "qualified individ-

_____

[4] We note that the Authority was not required to accommodate Hollestelle before it learned that he was disabled. See Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 932 (7th Cir. 1995). The Authority's voluntary efforts in this regard, however, are probative of the Authority's goodwill towards Hollestelle and its desire to keep him as an employee.

[5] Hollestelle argues that the Authority should have allowed him the forty-five minute flex-time period recommended by Dr. Holland. However, an employee does not have the right to select the accommodation of his choice. See Gile v. United Airlines, Inc. , 95 F.3d 492, 499 (7th Cir. 1996) (citing Schmidt v. Methodist Hosp., 89 F.3d 342, 344-45 (7th Cir. 1996)); see also Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285-86 (11th Cir. 1997); cf. Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68-69 (1986) (Title VII religious discrimination claim). Rather, his employer must make a reasonable accommodation. See Gile, 95 F.3d at 499. Moreover, an employee bears the burden of

ual" under the ADA because he was unable to perform the essential functions of his job even with the Authority's reasonable accommodation. We, therefore, affirm the district court's grant of judgment as a matter of law as to Hollestelle's claim of discrimination under the ADA.

III.

Hollestelle also contends that the district court erred by granting the Authority's motion for judgment as a matter of law on his claim for retaliatory discharge. We find, even assuming that Hollestelle established a prima facie case of retaliation, that Hollestelle failed to show that the Authority's proffered legitimate nondiscriminatory reason for his discharge was pretextual. Accordingly, we affirm the ruling of the district court.

To establish a prima facie case of retaliatory discharge under Title VII, a plaintiff must prove that he engaged in protected activity, that the employer took adverse employment action against him, and that "a causal connection existed between the protected activity and the adverse action." Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Once the plaintiff establishes a prima facie case, the burden switches to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. Id. After the employer has done so, the burden switches back to the plaintiff to prove that the employer's proffered reason is pretextual. Id.

Even assuming that Hollestelle established a prima facie case of retaliation, he failed to prove that the Authority's legitimate, nondiscriminatory reason for its action was pretextual. Hollestelle's evidence of retaliation essentially consists of the fact that the Authority terminated him after it learned that he had filed a complaint of discrimination. We have held, however, that "`mere knowledge on the

_____

showing that he could perform the job's essential functions with a reasonable accommodation, Tyndall, 31 F.3d at 213, and there is no reason to believe that Hollestelle's proposed accommodation would have cured his tardiness. In fact, Dr. Holland subsequently admitted at trial that he could not explain why it would have proved successful. J.A. 307.

8

part of an employer that an employee . . . has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons' for adverse personnel action against that employee." Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (quoting Willliams, 871 F.2d at 457). In Carter, we affirmed the district court's dismissal of a retaliation claim at the end of the plaintiff's case where, despite the fact that the plaintiff had established a prima facie case of retaliation, the evidence indicated that defendant had "substantial reasons" for termination. Id.

In the instant case, the Authority maintained that it terminated Hollestelle because of his consistent tardiness, and the uncontradicted evidence proved precisely that. Furthermore, the fact that the Authority made considerable efforts to accommodate Hollestelle even after it knew Hollestelle had filed a discrimination complaint completely undercuts Hollestelle's claim. Accordingly, based on the uncontradicted evidence supporting the Authority's proffered nondiscriminatory reason for termination and its efforts to reasonably accommodate Hollestelle after it learned of Hollestelle's discrimination filing, we hold that Hollestelle "has not met his ultimate burden of proving retaliatory discharge." Id.[6]

_____

[6] Hollestelle also complains about the district court's exclusion of the EEOC's findings and a document containing opinions of an examining physician. We find that the district court properly excluded the evidence. We also find that the excluded evidence had little or no probative value and, even if it had been admitted, would not have raised a triable issue of fact.

Hollestelle complains initially that the district court abused its discretion by excluding from evidence two EEOC determinations and related documents. Hollestelle argues that these materials were admissible to show that the Authority had knowledge of Hollestelle's discrimination filing when it made its decision to discharge him. We need not reach the issue, however, because our conclusion that Hollestelle failed to show that the Authority's proffered reason for discharging him was pretextual assumes that the Authority knew about his charge of discrimination when it discharged him.

Hollestelle complains secondly that the district court abused its discretion by excluding the report of Dr. Holland. We affirm the decision of the district court because the report contains more legal than medical

9

IV.

For the reasons stated above, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

_____
opinions. <u>See</u> Fed. R. Evid. 704 advisory committee notes ("[Rules 701, 702 and 403] stand ready to exclude opinions phrased in terms of inadequately explored legal criteria."); <u>Hygh v. Jacobs</u>, 961 F.2d 359, 363-64 (2d Cir. 1992); <u>Phillips v. Calhoun</u>, 956 F.2d 949, 952 (10th Cir. 1992); <u>Hermitage Indus. v. Schwerman Trucking Co.</u>, 814 F. Supp. 484, 485-86 (D.S.C. 1993). The report states that Hollestelle's depression "clearly represents a substantial impairment in many areas of his daily living, and is therefore a disability within the meaning of the ADA. The Authority is therefore obliged, in my opinion, to provide reasonable accommodation to this employee." J.A. 493. The report continues: "allowing [Hollestelle] 45 minutes (up to 9:00 A.M.) to commence work, represents a reasonable accommodation by the Authority." <u>Id.</u>

We note additionally that we fail to see how Hollestelle was harmed by the decision to exclude the report since Dr. Holland was able to testify at trial concerning the facts surrounding his examination and the medical opinions he formed based on that examination.

10