# 2002 DTA 81

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ
### PANEL I

EDWIN RIVERA FLORES
Apelante

v.

MCGAW DE PUERTO RICO, INC.
Apelado

Núm. KLAN-01-00216

San Juan, Puerto Rico, a 25 de marzo de 2002

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

López Vilanova, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso instado en el caso de epígrafe interesa la revocación de una sentencia emitida el 22 de enero de 2001 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (Hon. Ricardo Santana Ramos, J.). Mediante ésta, se declaró no ha lugar y se desestimó en todos sus extremos una demanda de daños y perjuicios por alegado discrimen en el empleo promovida por el aquí apelante, Edwin Rivera Flores. Con el beneficio de transcripción de la prueba y la comparecencia de las partes, procedemos a resolver.

### I

El 3 de junio de 1994, Edwin Rivera Flores instó una acción de daños y perjuicios contra McGaw of Puerto Rico, Inc. (*"McGaw"*). Sostuvo que su patrono, McGaw, discriminó en su contra por razón de su padecimiento de la espalda al negarle un acomodo razonable que le permitiera cumplir a cabalidad con sus funciones en el trabajo. Además, alegó que dicha negativa le ocasionó *"...una recaída en su lesión de la espalda lo cual lo [sic] ha obligado a tener que acogerse a los beneficios del Fondo del Seguro del Estado."* Apéndice del Recurso, Anejo I, pág. 1. El señor Rivera Flores cimentó su acción en las disposiciones del *"American With Disabilities Act"* (*"A.D.A."*), 42 U.S.C. secs. 12101 *et seq.*, y solicitó una suma no menor de $150,000.00 por concepto de angustias y sufrimientos mentales.

McGaw solicitó la desestimación de la causa de acción. Arguyó que el foro de instancia carecía de jurisdicción para entender en el pleito, toda vez que el aquí apelante incumplió con su obligación de agotar los trámites administrativos según lo dispone la A.D.A. y la Ley de Derechos Civiles, 42 U.S.C. secs. 1981 *et seq.* El foro inferior denegó tal petición. Inconforme, McGaw recurrió al Tribunal Supremo, quien confirmó la

resolución recurrida y devolvió el caso para la continuación de los procedimientos. El Tribunal Supremo concluyó que el hecho de que el señor Rivera Flores no hubiera agotado remedios administrativos no implicaba que éste no tuviera derecho a remedio alguno. Indicó que aun cuando la reclamación bajo el A.D.A. fuera improcedente, ello no excluia otros remedios al amparo de la ley local -Ley Núm. 44 de 2 de junio de 1985 (*"Ley 44"*), 1 L.P.R.A. sec. 501 *et seq.*-, por lo que no correspondía desestimar la demanda en esa etapa de los procedimientos. *Rivera Flores v. Cía. ABC*, 138 D.P.R. 1, 8-9 (1995).

Posteriormente, McGaw sometió la correspondiente alegación responsiva. En la misma negó las alegaciones fundamentales de la demanda. Señaló haber provisto al allí demandante de los acomodos razonables necesarios para que éste pudiera realizar sus funciones sin que se agravara su padecimiento de la espalda. Por ello, rechazó ser responsable de la supuesta recaída en la condición sufrida por el señor Rivera Flores y sostuvo que éste no estaba capacitado para desempeñar las funciones y deberes de su puesto. Asimismo, alegó que el aquí apelante incumplió con su obligación de mitigar daños.

En el informe de la conferencia con antelación al juicio, las partes establecieron lo que entendían eran las controversias del caso. Para el allí demandante, la única controversia a resolver era si la demandada le había provisto o no de acomodos razonables. Por su parte, McGaw entendía que los asuntos a resolver eran dos: (1) si los acomodos provistos al demandante Rivera Flores eran o no razonables; y (2) si éste era un empleado capacitado para desempeñar las funciones de su puesto según lo dispuesto por la Ley 44. Véase Apéndice del Recurso, Anejo VII, pág. 6. De los documentos ante nos, surge que, posteriormente, las partes estipularon como única controversia a dilucidar la razonabilidad de los acomodos provistos por McGaw a Rivera Flores.

El 11 de febrero de 2000, durante el juicio, luego de finalizado el desfile de prueba y una vez sometido el caso, Rivera Flores solicitó que se le autorizara a enmendar la demanda para conformar las alegaciones con la prueba aportada durante el juicio. Dicha parte alegó que durante el juicio se aportó prueba no objetada por la demandada McGaw que permitía establecer causas de acción no invocadas en la demanda. En específico, señaló que la prueba en cuestión permitía establecer una acción bajo la *"Ley de Licencia Médico Familiar"*. En ese momento, el juez señaló que *"entendía"* que no se desfiló prueba que permitiera crear una nueva causa de acción, y le indicó a dicha parte que, de entenderlo procedente, sometiera su solicitud por escrito. Véase Transcripción de la vista de 11 de febrero de 2000, págs. 54-62. Una semana después, el 18 de febrero, Rivera Flores sometió dicho reclamo por escrito. En el mismo indicó:

*"4. En el caso de epígrafe, el Tribunal ha tenido ante su consideración cuestiones no suscitadas en las alegaciones con el testimonio del demandante y la prueba presentada por éste en el sentido de que su patrono y aquí demandado, permitió e indujo a que éste levantara y transportara o sostuviera sobre su persona cargas que excedían los límites dispuestos por el Reglamento del Secretario del Trabajo y Recursos Humanos y en adición, que a éste se le impusieron o se le imponían condiciones más onerosas de trabajo, por razón de que éste, mediante su petición de acomodo razonable, se negaba a levantar, transportar o sostener sobre su persona, cargas que excedían los pesos máximos establecidos por Ley o Reglamento. Como cuestión de hecho, la declaración del demandante establece que el accidente que dio motivo al pleito de epígrafe, ocurre porque a éste se le obliga a sostener, levantar y transportar pesos en exceso de lo debido, aun en contra de las recomendaciones médicas que se habían hecho para con éste.*

*5. Por otro lado, muy respetuosamente entendemos, que las evidencia que ha tenido ante su consideración el Tribunal y que no fue objeta[da] por la parte demandada, tiende a establecer que el aquí demandante, habiendo obtenido una modificación en sus honorarios, en atención a un problema de ubicación de la custodia de sus hijos y que posteriormente le fue quitado en forma onerosa por el patrono aquí demandado, al cambiar los honorarios de trabajo del laboratorio."* Apéndice del Recurso, Anejo IX, págs. 1-2.

McGaw se opuso a la referida enmienda señalando que no existían razones que justificaran la misma.

Arguyó que no se aportó prueba que sustentara remedio alguno al amparo de otra legislación que no fueran las invocadas desde el inició del pleito y rechazó que hubiera consentido implícitamente a que se enmendaran las alegaciones. De igual forma, sostuvo que era irrazonable conceder la referida enmienda, dado que habían transcurrido más de seis años desde el inicio de pleito y cuatro desde el comienzo del juicio, sin que existieran circunstancias que justificaran tal demora. Por último, la demandada señaló que con dicha enmienda se vería seriamente perjudicada, ya que no tendría oportunidad de defenderse de estas nuevas alegaciones traídas luego de sometido el caso. Véase Apéndice del Recurso, Anejo XX. Al denegar la petición de enmienda, el tribunal indicó: *"[n]o cabe duda de que la enmienda que pretende la parte demandante introducir es materia que conocía desde los inicios del caso y que a pesar del largo trayecto del caso nunca solicitó enmienda a sus alegaciones. Inclusive, no cabe duda de que lo que pretende introducir como enmienda es materia que está contenida y recogida sustancialmente en la demanda."* Apéndice del Recurso, Anejo XXI, pág. 2.

Más tarde, se emitió el dictamen apelado. El tribunal concluyó que McGaw le concedió al apelante Rivera Flores numerosos acomodos para que éste razonablemente pudiera continuar realizando sus funciones. Las medidas tomadas conllevaron incluso relevarle de algunas de sus funciones, de forma que *"[e]l demandante se limitaba a realizar funciones marginales de la plaza de Técnico de HES, las cuales no eran suficientes para llenar las ocho (8) horas de labor diarias."* Apéndice del Recurso, Anejo XXIII, pág. 25. Se determinó como cuestión de hecho que el apelante nunca puso al tribunal sentenciador en condiciones para establecer qué otro acomodo razonable, además de los provistos por McGaw, se le podía otorgar.

De otra parte, el foro inferior expresó:

*"En el presente caso, ha quedado demostrado a satisfacción del Tribunal que el demandante no era una persona cualificada con impedimento, dado que no podía realizar las funciones esenciales de la plaza de Técnico de HES, e.g., muestrear, realizar pruebas, realizar análisis de pruebas, etc. El hecho de que McGaw le eximiera de realizar las funciones esenciales de la plaza de Técnico de HES durante cierto tiempo, no relevaba al demandante de demostrar ... que era una persona cualificada con impedimento, requisito indispensable para obtener protección al amparo de la Ley 44."* Apéndice del Recurso, Anejo XXIII, pág. 25.

Inconforme, acude ante nos el señor Rivera Flores mediante la oportuna interposición del presente recurso. En el mismo señala, como fundamentos de revocación, que el tribunal *a quo* incidió al concluir que la compañía apelada le proveyó de acomodos razonables, a pesar de que no se aportó prueba que sustente tal conclusión, así como al no permitir enmendar las alegaciones, y considerar y adjudicar controversias distintas a las estipuladas por las partes. Asimismo, arguye que erró dicho tribunal al no conceder una indemnización por daños cuando la misma procedía como cuestión de derecho a partir de los *"hechos que quedaron probados"* por su testimonio en el juicio. ■

Examinemos su reclamo.

## II

La Regla 13.2 de Procedimiento Civil, 32 L.P.R.A. Ap. II R. 13.2, dispone que las alegaciones serán "... *enmendadas por la prueba al momento del juicio si la parte contra quien se presenta consiente a ello expresa o implícitamente o si el tribunal así lo permite." Colón Prieto v. Géigel*, sentencia de 11 de junio de 1998, **98 J.T. S. 71**, pág. 1032. Dicha regla realmente establece dos instancias en que se permite enmendar las alegaciones para conformarlas a la prueba aportada. La primera situación es cuando en el juicio se sometan, con el *consentimiento* expreso o implícito de las partes, asuntos no incluidos en las alegaciones. En tal caso, la enmienda es automática. De otra parte, se permitirá la enmienda a las alegaciones aun cuando la evidencia aportada hubiera sido oportunamente y correctamente objetada por no haber sido parte de las alegaciones de la demanda, *"...siempre que con ello se facilite la presentación del caso y [que] la parte que se oponga no demuestre a satisfacción del Tribunal que la admisión de tal prueba perjudicaría su reclamación o defensa."*

*Id.* Cf. Wright, Miller & Kane, *Federal Practice Procedure*: Civil 2d sec. 1491. En ambos casos, las alegaciones se entenderán enmendadas a todos los efectos como si estos nuevos asuntos hubieran sido incluidos en las alegaciones desde el inicio.

La cuidadosa consideración de la voluminosa transcripción del juicio nos convence de que durante el mismo **no** se aportó prueba alguna que justificara una enmienda a las alegaciones de la demanda, dado que dicha prueba no establecía una nueva causa de acción. La prueba vertida por las partes tendía a establecer *exclusivamente* sus respectivas teorías del caso. La aportada por el apelante pretendía establecer que McGaw **no** le proveyó de acomodos razonables y le asignó mayores tareas y responsabilidades. En cambio, mediante su prueba, la apelada pretendía constatar lo contrario, a saber, que le proveyó de numerosos y razonables acomodos y que no se le requirieron tareas distintas y en mayor número que a los demás empleados que ocupaban su puesto, sino que, por el contrario, se le exigían menos. Sin embargo, el apelante en su escueta argumentación sostiene que dicha enmienda procedía como cuestión de derecho, ya que *"[e]s de la propia prueba de los demandados en el juicio, mediante el testimonio del Sr. Edgardo Ramos, que queda establecido y probado [sic], como lo establece el Tribunal en su sentencia en su inciso #32 de sus determinaciones de hecho, la cuestión relacionada a la licencia médico familiar que se había establecido con el demandante en virtud de su condición relacionada a la custodia de sus hijos y que posteriormente, le fue quitada al poner a los técnicos del laboratorio, incluyendo al demandante, a rotar."* Escrito del recurso, pág. 5. Tal contención es palmariamente inmeritoria.

El apelante omite indicar el contexto y el alcance del referido testimonio. El testimonio del Sr. Edgardo Ramos iba dirigido a atacar la contención del apelante quien atestó que, a diferencia de los demás técnicos, tenía horario fijo por razón de su antigüedad en la empresa. Ramos atestó que el apelante le solicitó turno fijo para resolver un problema de índole familiar. Le indicó que no tenía quién cuidara de sus hijos durante las tardes y ya un vecino le había querellado porque éstos estaban solos en la casa durante esas horas. Es por ello que McGaw decide concederle un horario fijo. Véase Transcripción de la vista de 27 de octubre de 1998, págs. 165-166. Posteriormente y dado que el apelante ya **no** tenía la custodia de sus hijos, se determinó que comenzaría a rotar nuevamente al igual que el resto de los técnicos, toda vez que no existía razón que le impidiera rotar. Apéndice del Recurso, Anejo XXIII, pág. 17, Determinación de Hecho núm. 58. Así, contrario a lo que sostiene el apelante, el referido testimonio no establece que se le alterara arbitrariamente su horario ni la privación de una *'licencia'* a partir de la cual surja una causa de acción. Por el contrario, establece cuál fue el procedimiento y los fundamentos para que se le concediera un horario fijo y su posterior eliminación.

### III

La Ley 44 *"...fue aprobada con el fin de proteger a las personas con impedimentos físicos o mentales, para ampliar sus oportunidades de empleo y prohibir el discrimen en empleo o contra tales personas."* Ríos Jaimán v. Cidra Manufacturing Operations of P.R., Inc., opinión de 15 de junio de 1998, **98 J.T.S. 73**, pág. 1055. Véase, además, Exposición de Motivos de la Ley 44, L.P.R.A., 1985, págs. 166-167. Mediante la Ley Núm. 105 de 20 de diciembre de 1991, se enmendó la Ley 44 para atemperarla con la A.D.A. ▪ *García Díaz v. Darex Puerto Rico, Inc.*, opinión de 20 de mayo 1999, **99 J.T.S. 84**, pág. 1060; *Ríos Jaimán v. Cidra Manufacturing Operations of P.R., Inc., supra.*

El Artículo 9 de la Ley 44, *supra,* sec. 507 a , establece la obligación del patrono de *"...llevar a cabo acomodos razonables en el lugar de trabajo para asegurar que se les permita a las personas con impedimentos, cualificadas [para] trabajar efectivamente al máximo de su productividad...".* A tenor con el estatuto, *acomodo razonable* significa:

*"...el ajuste lógico adecuado o razonable que permite o faculta a una persona cualificada para el trabajo, con limitaciones físicas, mentales o sensoriales, ejecutar o desempeñar las labores asignadas a una descripción o definición ocupacional. Incluye ajustes en el área de trabajo, construcción de facilidades físicas, adquisición*

*de equipo especializado, proveer lectores, ayudantes, conductores o intérpretes y cualquier otra acción que razonablemente le facilite el ajuste a una persona con limitaciones físicas, mentales o sensoriales, en su trabajo y que no representa un esfuerzo extremadamente oneroso en términos económicos. ....*" Artículo 1 (b), *supra*, sec. 501 (b).

Se ha resuelto que para que un empleado reciba protección al amparo de la Ley 44 y, por tanto, su patrono esté obligado a proveerle acomodos razonables, aquél tendrá que establecer: (1) que es una persona con impedimento como lo define la ley; y (2) que está cualificado para llevar a cabo las funciones básicas de ese trabajo, con o sin el acomodo razonable. *García Díaz v. Darex Puerto Rico, Inc., supra.*

La obligación del patrono de proveer acomodos razonables a los empleados *"cualificados"* no es absoluta. Existen situaciones en que el acomodo solicitado sería irrazonablemente oneroso, por lo que afectaría el funcionamiento de la empresa. Así, se ha determinado que no constituirá un acomodo razonable en el empleo una medida que violente o contravenga disposiciones legales o cree un ambiente de peligrosidad en el lugar de trabajo. Lindeman & Grossman's, *Employment Discrimination Law*, Washington D.C:, Third Edition, 2000 cumulative supplement, pág. 181. También se ha resuelto que existen otras *"medidas"* que el patrono no viene obligado a tomar para proveerle de un acomodo a sus empleados. A manera de ejemplo, se ha resuelto que el patrono no tiene que eximir al empleado de realizar las tareas esenciales de su puesto o redistribuir las mismas entre otros empleados. *Laurin v. Providence Hospital,* 150 F. 3d 52, 56 (1st Cir. 1998) (*"It is well settled that an employer need not accommodate a disability by foregoing an 'essential function' of the employment position."*); *Scheer v. City of Cedar Rapids,* 956 F. Supp. 1496, 1502 (N.D. Iowa 1997) (*"[T]he request to perform only some of the essential functions of a job is not a request for reasonable accommodation."*); *Cochrum v. Old Ben Coal Company,* 102 F. 3d 908, 913 (7th Cir. 1996) (*"In short, reasonable accommodation does not encompass reallocation of essential job functions."*); *Milton v. Scriver, Inc.,* 53 F. 3d 1118, 1124 (10th Cir. 1995) (*"An employer is not required by ADA to reallocate job duties in order to change the essential functions of a job."*).

El hecho de que un patrono haya realizado acomodos que van más allá de lo exigido por ley, como podría ser eximir a un empleado de efectuar las funciones esenciales de su puesto, no le obliga a conceder indefinidamente dicho acomodo. Asimismo, la concesión de un acomodo de tal tipo tampoco crea un *"derecho"* a favor del empleado beneficiado. *Holbrook v. City of Alpharetta, Georgia,* 112 F. 3d 1522, 1528 (11th Cir 1997); *Myers v. Hose,* 50 F. 3d 278, 284 (4th Cir 1995) (*"[t]e fact that certain accommodations may have been offered ... to some employees as a matter of good faith does not mean that they must be extended to [them] as matter as a matter of law."*).

## IV

La Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2, requiere a los tribunales especificar en todos los pleitos "...*los hechos probados y separadamente consignará sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda; ... de igual modo, consignará determinaciones de hechos y conclusiones de derecho que constituyan los fundamentos de su resolución.*" La necesidad de una determinación de hecho en una sentencia o resolución será determinada por el foro que emita la misma, ya que únicamente éste es quien conoce cuáles fueron las razones que motivaron su fallo. Los tribunales, por tanto, no están obligados a consignar detalles minuciosos o innecesarios, sino una relación de los hechos pertinentes ante sí probados. J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, **Publicaciones JTS**, T. II, pág. 684. Tampoco vienen obligados a expresar todos los fundamentos posibles en apoyo de su decisión. Así, se ha señalado que *"[w]ithin its discretion it can reserve those which are not considered necessary to found its decision, if its has express those which were felt to be sufficient for its determination."* *López-Correa v. Marine Navigation Co.,* 289 F. Supp. 993, 1001·(1968).

La referida norma tiene el propósito primordial de poner a los foros apelativos "...*en condiciones de poder determinar si las conclusiones de hechos y derecho a que llegó el tribunal sentenciador estuvieron justificadas*

*o no." Firpi v. Pan American World Airways, Inc.*, 89 D.P.R. 197, 218-219 (1963), citando a *Santana v. García*, 71 D.P.R. 142 (1950). Los tribunales vienen obligados a consignar en sus dictámenes aquellos detalles o hechos pertinentes que instruyeron su criterio al momento de tomar su determinación. Su inobservancia, sin embargo, no es fundamento de revocación en aquellos casos en que el foro apelativo tenga una clara comprensión de las razones que justificaron la decisión del tribunal sentenciador. J. A. Cuevas Segarra, *supra*, pág. 685.

De otra parte, la regla comentada dispone que: *"[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto, a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos."* Regla 43.2, *supra*. A partir de ello, es un principio cardinal que los foros apelativos no intervendrán con la apreciación de la prueba efectuada por los tribunales sentenciadores, a menos que exista error manifiesto o que éstos hayan actuado movidos por prejuicio, pasión o parcialidad. Véanse *Huertas Alicea v. Compañía de Fomento Recreativo*, opinión de 4 de noviembre de 1998, **98 J.T.S. 144**, pág. 262; *Méndez v. Morales*, 142 D. P. R. 26, 36 (1996); *Rodríguez Yola v. Machado Díaz*, 136 D. P. R. 250, 258 (1994); *Benítez Guzmán v. García Merced*, 126 D.P.R. 302, 308 (1990); *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 14 (1987); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 D.P.R. 357, 365 (1982); *Ortiz v. Cruz Pabón*, 103 D.P.R. 939, 946-947 (1975). Fundamento de ello, es el hecho de que los tribunales de instancia están en mejor posición para aquilatar la prueba testifical, toda vez que tiene la oportunidad de ver y observar a los testigos mientras deponen, sus gestos, dudas y contradicciones. Véanse *Figueroa v. Am. Railroad Co.*, 64 D.P.R. 335, 339 (1944); Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2. Al respecto, se ha señalado que:

*"[l]a imposibilidad de reproducir ante los tribunales de apelación o de revisión, los elementos puramente expresionales de los testimonios orales, le impuso a dichos tribunales de apelación, o de revisión, la obligación de respetar la apreciación que el juez sentenciador hiciera de aquellos elementos de credibilidad que se desprenden espontáneamente de la conducta del testigo, mientras presta declaración ante juez de hechos."*

*Sanabria v. Sucn. González*, 82 D.P.R. 885, 993 (1961). **El hecho de que una parte esté insatisfecha con las determinaciones de hechos del dictamen, no es suficiente para alterar o modificar las mismas**. En ausencia de circunstancias extremas que indiquen lo contrario, los foros apelativos estamos obligados a presumir la corrección de las determinaciones efectuadas por el magistrado de instancia.

## V

Luego de considerar cuidadosamente la transcripción de la prueba sometida, concluimos que, contrario a lo alegado por el apelante, dicho tribunal tuvo ante sí prueba suficiente para sustentar todas sus determinaciones. Dicho de otra forma, las determinaciones de hecho efectuadas por el foro inferior están fuertemente sostenidas por la prueba, de forma que justifican las conclusiones de derecho derivadas. En ausencia de indicios de parcialidad, prejuicio, pasión o error manifiesto, es menester sostener dichas conclusiones.

El tribunal inferior determinó que para el 1990, al apelante, quien era empleado del laboratorio químico de McGaw, se le asignó efectuar pruebas a todos los productos nuevos. El apelante acudió a su médico por un alegado ataque de nervios sufrido como consecuencia de la cantidad de pruebas que tenía que realizar en poco tiempo. Le recetaron calmantes y descanso por tres días. Al reincorporarse a sus labores se le relevó de realizar las referidas pruebas.

El 8 de abril de 1992, el apelante Rivera Flores le informó a sus supervisores sobre su condición de la espalda, la cual entendía era consecuencia de todas las responsabilidades de su trabajo. Éstos le enviaron al dispensario de la compañía donde completaron el informe patronal para referirlo al Fondo del Seguro del Estado (*"Fondo"*). El Fondo determinó que el apelante recibiría tratamiento médico mientras trabajaba (C.T.). El 27 de mayo de 1992, el apelante fue dado de alta por el Fondo sin incapacidad y sin que se hicieran

recomendaciones o restricciones algunas en cuanto a su trabajo.

El apelante regresó a trabajar con C.T. Su supervisor determinó cambiar sus funciones para que no se afectara su condición de la espalda como consecuencia del trabajo, A esos efectos, se le relevó de: (1) hacer las pruebas a los residuales de HES; (2) mover los drones de HES; (3) mover los cilindros; y (4) muestrear.

Posteriormente, Rivera Flores se reportó nuevamente al Fondo por una supuesta recaída en su condición de la espalda. El 3 de agosto de 1992, el Fondo determinó que no existía evidencia de recaída y se negó a reabrir el caso. Insatisfecho, Rivera Flores apeló ante la Comisión Industrial ("*Comisión*") alegando que su condición ameritaba que le otorgaran incapacidad. La Comisión devolvió el caso al Fondo y dicha agencia, el 2 de septiembre de 1993, determinó dar al apelante tratamiento en C.T. mientras se evaluaba el caso. El apelante estuvo en descanso por tres meses hasta que fue finalmente dado de alta.

Al reincorporarse a sus funciones, el apelante fue referido al médico-consultor de McGaw quien lo evaluó e hizo recomendaciones referentes a las funciones que podía realizar. Emitió una recomendación médica para acomodo razonable permanente en el área de trabajo, la cual consistía en limitar movimientos que envolvieran flexionar la región lumbar, no levantar objetos bajo la cintura, no levantar o empujar objetos pesados como tanques de gas y los drones de HES, no hacer fuerza excesiva y utilizar una faja para la espalda. Dichas recomendaciones las hizo a base de las tareas que el apelante le informó que realizaba. Además, el médico-consultor le informó al Departamento de Recursos Humanos de McGaw y el supervisor del apelante mediante la hoja de recomendaciones de acomodo razonable permanente. El apelante fue advertido por su supervisor que de no seguir las recomendaciones del médico-consultor se tomaría una acción disciplinaria en su contra.

Al apelante se le eximió de tomar adiestramientos de computadora, ya que utilizar la misma le dañaba la cabeza ("*crack my head*"). Dicho adiestramiento era necesario, ya que el análisis de los datos de las pruebas se comenzaría a hacer mediante computadora para agilizar los trabajos del laboratorio. Como consecuencia, otra empleada, la señora Vanesa Ortiz, asumió la responsabilidad por la computadora, ya que el apelante nunca aprendió a trabajar en la misma. El apelantes se resistía a los cambios tecnológicos implantados en la empresa, por lo que hubo que relevarle de realizar cálculos de pruebas.

Debido al número de funciones que se le relevó, el apelante no tenía trabajo para ocho horas, ya que las funciones que realizaba a lo sumo le tomaban cinco horas, por lo que su cúmulo de trabajo era menor que el de los demás técnicos.

El 30 de marzo de 1994, se reunió a los técnicos del laboratorio para informarles que, debido a necesidades operacionales, efectivo al 18 de abril de 1994, todos los técnicos del laboratorio volverían a rotar. Se determinó que el apelante también rotaría, ya que las limitaciones impuestas por el médico-consultor no lo impedían. También se tomó en consideración que el apelante ya no tenía la custodia de sus hijos, quienes habían regresado a Estados Unidos a vivir con su madre, por lo que ya no existía razón por la que no pudiese rotar. Al informársele que comenzaría a rotar, el apelante reaccionó violentamente y señaló frente a otros técnicos que él no podía rotar. El apelante comenzaría a rotar en el segundo turno el 25 de abril de 1994.

El 21 de abril de 1994, el apelante acudió nuevamente al médico-consultor por dolor de espalda, estrés y le informó que había estado moviendo drones. El médico-consultor indicó que iba a investigar, dado que el había emitido unas directrices. El doctor también emitió un segundo memorando sobre restricciones de trabajo para el apelante. El Médico-consultor tuvo una reunió con el supervisor del apelante, luego de la cual, éste le advirtió nuevamente al apelante que si violaba las restricciones tomaría acciones disciplinarias en su contra.

El mismo día en que el apelante se suponía comenzara a rotar en el segundo turno, el 25 de abril de 1994, sufrió un accidente de trabajo al mover un cilindro por la rampa. Ello a pesar de las instrucciones de sus

supervisor de que tenía que acatar las restricciones del médico.

Para abril de 1994, al apelante se le había relevado de: (1) hacer las pruebas residuales de HES; (2) mover los drones de HES; (3) mover los cilindros; (4) muestrear; (5) usar la prensa, (6) tomar adiestramiento de la computadora; y (7) realizar los cálculos de los análisis de las pruebas. En consecuencia, para esa fecha, el apelante ya no estaba realizando las funciones esenciales de la plaza de técnico de HES.

La consideración de esta situación fáctica, a la luz del marco doctrinal previamente reseñado hace evidente que las conclusiones del foro sentenciador fueron correctas. Contrario a lo que sostiene el apelante, la parte apelada le proveyó de numerosos acomodos razonables para que éste continuara desempeñando sus labores. De hecho, le proveyeron incluso de acomodos mayores a los requeridos por ley, toda vez que le relevaron de realizar funciones intrínsecas a su puesto, imponiéndole a los otros empleados la obligación de cumplir con las mismas.

## VI

Por otro lado, el apelante sostiene que el foro *a quo* incidió al *"considerar y adjudicar"* controversias distintas a las estipuladas por las partes. En específico, al determinar que ante sí se había establecido que el apelante no era una persona con impedimento cualificada para realizar las funciones esenciales del puesto de técnico de HES. Pasa por alto el apelante que aquilatar prueba y efectuar determinaciones sobre los asuntos probados en un juicio es una de las funciones principales de los jueces de instancia. Es parte del deber de todo juzgador de los hechos de analizar la prueba a fin de desentrañar la verdad de los hechos y hacerlos constar. Resulta, además, que es el juzgador de los hechos y sólo él, quien en el ejercicio de su discreción, decide cuáles de los asuntos probados hará constar en el dictamen. Yerra, por tanto, el apelante al sostener que el mero hecho de hacer constar que se probó el referido asunto, constituye un indicio de parcialidad del magistrado en su contra, ya que tan sólo se trata del descargue responsable de las funciones del magistrado.

Por último, sostiene el apelante que erró el foro de instancia al no concederle una indemnización por daños y perjuicios aun cuando la misma procedía como cuestión de derecho a partir de los hechos que quedaron probados por su testimonio en el juicio. Tal contención es inmeritoria. En primer lugar, el apelante olvida que no es él, sino el juez que aquilata la prueba, quien determina cuáles hechos fueron probados. Y a partir de los hechos que el foro inferior concluyó como probados, no existe circunstancia o razón alguna que justifique la concesión de una indemnización por daños. La razón es sencilla: ante el foro de instancia no se estableció ningún un acto negligente o culposo de la apelada, ni un posible nexo causal entre éste y el daño sufrido por el apelante. Por el contrario, se estableció que el accidente del trabajo que agravó su condición de la espalda fue ocasionado por él mismo al mover un cilindro a través de una rampa, lo cual le estaba absolutamente prohibido por las directrices tomadas por su patrono.

## VII

Por los fundamentos previamente consignados, se confirma la sentencia apelada.

Notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 81**

**1.** Los Errores señalados literalmente leen:

*"Erró el Tribunal de Primera Instancia al no permitir las enmiendas para conformar las alegaciones con la prueba del caso.*

*Erró el Tribunal de Primera Instancia al fundamentar su decisión y entrar a considerar asuntos y controversias distintas a las estipuladas por las partes en la Conferencia con Antelación al Juicio.*

*Erró el Tribunal de Primera Instancia al descartar las declaraciones espontáneas por excitación hechas por el demandante en relación a su accidente en el trabajo que era el evento esencial del caso y que había sido corroborada por los testigos de los demandados.*

*Erró el Tribunal de Primera Instancia al producir una decisión en el caso sin la suficiente preponderancia de prueba requerida, fundamentada en una prueba testifical insuficiente de los demandados y una apreciación errónea del testimonio del demandante.*

*Erró el Tribunal de Primera Instancia al no considerar y conceder causas de acción que eran procedentes de acuerdo a los hechos que quedaron probados por la prueba que tuvo ante su consideración."*

**2.** A partir de ello, resulta evidente la similaridad de propósitos que existe entre ambos estatutos. Así, tampoco hay duda del alto valor persuasivo que tienen las interpretaciones jurisprudenciales de dicho estatuto federal al momento de interpretar y aplicar la Ley 44.