Francia POND, Plaintiff–Appellant,

v.

MICHELIN NORTH AMERICA, INC., also known as Uniroyal Goodrich Tire Manufacturing, Inc., Defendant–Appellee.

No. 98–4247.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1999.

Decided June 28, 1999.

Patrick L. Proctor (argued), Warsco, Brogan & Strunk, Fort Wayne, IN, for Plaintiff-Appellant.

Michael N. Petkovich (argued), Keck, Mahin & Cate, Chicago IL, Michael T. Graham, Jackson, Lewis, Schnitzler & Krupman, Chicago, IL, for Defendant-Appellee.

Before BAUER, FLAUM and MANION, Circuit Judges.

FLAUM, Circuit Judge.

The central question in this case is whether the "reasonable accommodation" requirement under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, requires an employer to transfer an employee to an occupied position that the disabled employee has a right to acquire under the provisions of a collective bargaining agreement. The district court concluded the ADA contains no such requirement and granted summary judgment for defendant Michelin North America, Inc. ("Michelin"). We affirm.

## Background

After two years working twelve-hour weekend shifts as a Battery Operator at the Michelin plant in Fort Wayne, Indiana, Francia Pond contracted Hepatitis C which rendered her unable to work. Michelin granted Pond a nine-month temporary total disability leave from her work as a Battery Operator.[1] Ten days prior to the expiration of the nine-month leave period, Michelin notified Pond that under the disability leave policy she would be terminated if she did not return to work. Pond responded that she was medically unable to perform her past work, which required twelve-hour shifts and lifting of up to forty pounds. She provided Michelin with a written medical opinion from her physician, Dr. Horani, attesting to these limitations. Based on these medical restrictions, Pond's union informed her that there were no jobs available for her at the Fort Wayne plant.

Pond prevailed on Dr. Horani to change her medical limitations. Several days after the first medical opinion, Pond sent Michelin an amended note purportedly eliminating the time and weight restrictions. Suspicious of this about-face,

Michelin scheduled Pond to be examined by another physician, Dr. Rowe. Dr. Rowe's examination accorded with Dr. Horani's original medical opinion, concluding "it is my medical opinion that Francia is unable to do any job in the plant due to her medical condition." To resolve the conflict between Dr. Rowe's opinion and the amended opinion of Dr. Horani, Michelin sought a third doctor of Pond's choosing. Pond chose Dr. Tafel, whose binding opinion restricted Pond from working more than eight hours per day and from regularly lifting over ten to fifteen pounds.

Since these limitations prevented Pond from assuming her past job as a Battery Operator, Pond sought another position in the plant. Pond and Michelin identified the Fill–Flip position as one she could perform with her medical restrictions. The Fill–Flip position requires frequent lifting of less than one pound, periodic lifting of five pounds, and occasional lifting of up to twenty pounds. The position also requires occasional exertion of about forty pounds of pressure to push or pull a cart. Employees in the position are generally able to work at their own pace.

Pond requested she be given an opportunity to work in the Fill–Flip position. At the time of Pond's request, there were no vacancies at that position. Pond, however, contended that her seniority at the plant entitled her to bump an existing employee from a Fill–Flip position as a reasonable accommodation for her work-related disability. Three days later, Michelin sent Pond a letter terminating her for failure to return to work within nine months of taking a temporary total disability leave.

## Discussion

■ Pond's principal contention is that the "reasonable accommodation" requirement under the Americans with Disabili-

---

1. A few months prior to going on disability leave, Pond assumed the title of Tire Builder as part of a plant-wide restructuring. Both sides agree, however, that Pond continued to perform the duties of a Battery Operator.

ties Act requires an employer to transfer an employee to an occupied position that the disabled employee has a right to acquire under the provisions of a collective bargaining agreement ("CBA"). Pond argues that she should have been allowed to bump a less senior employee from a Fill–Flip position and that Michelin should have engaged in the interactive process under the ADA to achieve this end.[2] Michelin responds that the ADA reasonable accommodation requirement does not include transfer to an occupied position and that any interactive process to achieve that end was therefore unnecessary.

At the outset, it is important to note that Pond does not rely on the CBA itself in seeking to bump a less senior employee from the Fill–Flip position. Rather, she argues that since the CBA allows her to bump a less senior employee from the Fill–Flip position, the Fill–Flip position occupied by a less senior employee should be considered "vacant" as that term is understood by the ADA. Pond argues that since the ADA requires reassignment of a disabled employee to a vacant position for which she is qualified, Michelin should have reassigned her to the vacant Fill–Flip position as a reasonable accommodation under the ADA.

■ The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "The term 'reasonable accommodation' may include ... reassignment to a vacant position." 42 U.S.C. § 12111(9). The plaintiff bears the burden of showing that a vacant position

exists and that the plaintiff is qualified for that position. *See McCreary v. Libbey–Owens–Ford Co.*, 132 F.3d 1159 (7th Cir. 1997); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.1997). We review the district court's grant of summary judgment de novo. *Anderson v. Baxter Healthcare*, 13 F.3d 1120, 1122 (7th Cir.1994).

■ We have previously delineated the scope of an employer's obligation to reassign a disabled employee to a vacant position. In *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir.1996), this Court held that the ADA requires reassignment to a vacant position where the employee is no longer able to perform the essential functions of her employment and is qualified for the vacant position. In *Gile* we limited the employer's duty to reassign a disabled employee, however, noting among other things that an employer need not bump another employee in order to create a vacancy. *Id.* at 499 (citing *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995)). Pond correctly observes that the statement in *Gile* that the ADA does not require an employer to bump an employee from an occupied position is dicta because the plaintiff in *Gile* did not ask for such an accommodation. Nevertheless, our examination of the ADA's text and legislative history confirms that the ADA does not require an employer to bump an employee from an occupied position in order to accommodate a disabled employee.

In *Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041 (7th Cir.1996), we addressed whether the ADA allowed an employee to bump a more senior employee as a reasonable accommodation. To answer this question, we looked first to the text of the statute to determine the scope of the ADA's reasonable accommodation require-

---

2. The federal regulations implementing the ADA envision that the employer engage in "an informal, interactive process with the qualified individual with a disability in need of the accommodation ... to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(*o*)(3). *See, e.g., Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, 1137 (7th Cir.1996).

ment. We noted that the ADA defines "reasonable accommodation" as follows:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). We observed in *Eckles* that "the suggestion that reassignment be to a vacant position suggests that Congress did not intend that other employees lose their positions in order to accommodate a disabled coworker." *Eckles*, 94 F.3d at 1047. We then looked to prior case law under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* and the religious practices provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j), each of which contains a duty of reasonable accommodation. We found that neither regime viewed the trumping of bona fide seniority rights as a reasonable accommodation. *Eckles*, 94 F.3d at 1047–48. Last, we turned to the legislative history of the ADA, observing that both the Senate and House Reports explicitly stated that under the ADA " 'bumping' another employee out of a position to create a vacancy is not required." *Eckles*, 94 F.3d at 1049 (quoting S.Rep. No. 101–116, at 32 (1989); H.R. Rep. 101–485(II), at 63 (1990) *reprinted in* 1990 U.S.C.C.A.N. at 345). Based on the ADA's text and history, we concluded in *Eckles* that reasonable accommodation under the ADA did not require bumping of a more senior employee.

We see no reason to reach a contrary conclusion in the case of an employee seeking to bump a less senior employee. Nothing in the text or history of the ADA suggests that in stating that " 'bumping' ... is not required" Congress intended to distinguish between employees of greater or lesser seniority. If anything, employees who have a contractual right to bump less senior employees present a less compelling need for an ADA remedy than those who do not possess such a right. We therefore hold that the ADA does not provide Pond the right to bump a less senior employee from the Fill–Flip position.[3]

█ Pond also argues that the district court erred in failing to consider whether she could have performed the Tire Builder job with reasonable accommodation. As noted above, several months before going on disability leave, Pond assumed the title of "Tire Builder." The reason for her acquiring this title is obscure since she continued to perform the duties of a Battery Operator while holding the Tire Builder title. Nevertheless, Pond argues Michelin should have considered assigning her the duties of a Tire Builder when she was no longer able to perform Battery Operator duties. However, Michelin need not have transferred Pond to a Tire Builder position because there were no vacancies in the Tire Builder position at the time Pond was seeking to return to work. Pond had no more right under the ADA to bump a less senior employee from a Tire Builder position than she did to bump an employee from the Fill–Flip position.

█ Pond's final contention is that Michelin should have placed her on the "off waiting medical placement"[4] list, an extended leave status at Michelin for employees with medical restrictions who do

---

**3.** We hold here only that the ADA does not provide Pond a remedy. She may still be able to pursue whatever rights she possesses under her collective bargaining agreement in the appropriate forum.

**4.** Michelin terms this list the "out waiting medical placement" list, but since nothing turns on this difference in terminology, we adopt plaintiff's term for the sake of convenience.

not have sufficient seniority to bid on jobs that meet those restrictions. Pond refers to Michelin's failure to place her on the list as "intentional discrimination," which we understand to be claim of disparate treatment relative to other similarly-situated disabled employees at Michelin.[5] We do not consider the merits of Pond's contention, however, because she failed to develop her disparate impact argument sufficiently in the district court for us to consider it on appeal.

■ Arguments not raised in district court are waived on appeal, *see Oates v. Discovery Zone*, 116 F.3d 1161, 1168 (7th Cir.1997), as are arguments raised in a conclusory or underdeveloped manner. *See Kensington Rock Island Limited Partnership v. American Eagle Partners*, 921 F.2d 122, 124–25 (7th Cir.1990). Pond can point to only two references to the "off waiting medical placement list" in the record. First, Pond contends that the provision of the amended complaint alleging that "[t]he Defendant refused to allow the Plaintiff to fill any position because of her disability and/or her perceived disability" encompassed a disparate treatment claim based on the off waiting medical placement list. Second, Pond relies on her brief in opposition to summary judgment in which Pond stated that one issue precluding summary judgment was "[w]hether the Defendant intentionally discriminated against the Plaintiff for seeking to enforce her rights under the ADA by refusing to classify her as an employee Off Waiting Medical Placement."

■ Pond's amended complaint was vague, and though in the federal system of notice pleading complaints need not articulate legal theories, *see Bartholet v. Reishauer A.G.(Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992), Pond still had the duty to inform the district court of her disparate treatment claim in opposing Michelin's summary judgment motion. *See, e.g., Transamerica Financial Services Inc. v. Sykes*, 171 F.3d 553, 555 (7th Cir.1999) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.") In Pond's response to Michelin's motion for summary judgment, she did include a reference to Michelin's failure to place her on the "off waiting medical placement" list as an instance of discrimination on the basis of her disability. However, she failed to accompany this statement with any argument or explanation as to how this failure on Michelin's part constituted discrimination. Pond's only other reference to the "off waiting medical placement" list in her response to Michelin's summary judgment motion came in a discussion of Michelin's failure to engage in the interactive process designed to identify a reasonable accommodation for her disability.[6] The district

---

5. An ADA claim of disparate treatment is predicated on 42 U.S.C. § 12112, which prohibits discrimination against "qualified individual with a disability because of the disability." A claim based on reasonable accommodation relies on a separate statutory provision, 42 U.S.C. § 12112(b)(5)(A)-(B). *See Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1283 (7th Cir.1996). The familiar *McDonnell Douglas* burden-shifting approach applies only to a claim of disparate treatment or disparate impact. *Compare DeLuca v. Winer Industries*, 53 F.3d 793 (7th Cir.1995) (applying *McDonnell Douglas* to an ADA disparate treatment claim) with *Bultemeyer*, 100 F.3d at 1283 (rejecting the application of *McDonnell*

*Douglas* to reasonable accommodation analysis). Because Pond's brief analyzes her claim under the *McDonnell Douglas* framework (and no question of disparate impact is raised by the facts of this case), we understand her to be raising a claim of disparate treatment. To the extent that Pond raises a claim that Michelin's not placing her on the "off waiting medical placement" list constitutes a failure to accommodate, we note that the ADA does not require creation of extended leave status to accommodate disabled employees. *See Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173 (6th Cir.1996).

6. The full text of the paragraph is as follows:

court judge was under no obligation to discover a separate claim of disparate treatment based on this offhand reference to the "off waiting medical placement" list.

### Conclusion

The judgment of the district court is AFFIRMED.

Had the defendant acted in good faith, it would have consulted with the Plaintiff about her ability to perform any of the positions in the plant. During this analysis, the parties could have discussed possible accommodations such as mechanical devices or job restructuring. If a position was found that the Plaintiff could perform with or without accommodation, then at the very least, the Defendant should have placed the Plaintiff on its Off Waiting Medical Placement list until the position became available. Furthermore, if the position was vacant or was filled by a less senior employee, the Defendant should have allowed the Plaintiff to fill the position immediately. The fact that the Defendant did none of these things, but rather terminated the Plaintiff mere days after she requested a specific accommodation is sufficient to allow a reasonable jury to find that the Defendant failed to accommodate the Plaintiff's disability as required by the ADA and, in fact, intentionally discriminated against her because she sought to exercise her right to an accommodation.