In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2454

RENA HARDY,

*Plaintiff-Appellant*,

*v.*

UNIVERSITY OF ILLINOIS AT CHICAGO,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00-C-7639—**John W. Darrah**, *Judge*.

ARGUED DECEMBER 5, 2002—DECIDED MAY 8, 2003

Before BAUER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Rena Hardy filed a sexual harassment and discrimination lawsuit against her former employer, the University of Illinois at Chicago, based on the conduct of her former supervisor, Willie Green. The district court granted summary judgment to the University on Hardy's sexual harassment claim, finding that there were no issues of material fact on the University's affirmative defense, as established in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Because we find there is a question of material fact about whether Hardy unrea-

sonably failed to avail herself of the University's sexual harassment reporting procedures, we reverse.

## I. BACKGROUND

Rena Hardy began working for the University in 1981 as a Building Services employee, where she performed cleaning and related housekeeping assignments. In February 2000, she was assigned to work at the University's Outpatient Care Center ("OCC") on its west campus, where her supervisor was Willie Green. Hardy alleges that Green began sexually harassing her shortly after she transferred to OCC in February; she claims Green inappropriately put his arm around her, hugged her, ran his hands through her hair, and made comments like "[your] clothes . . . do something to me," "you need someone to do something to you," "don't make me do something to you," "you need some," "Rena's the only one I want," and "you must have had some last night you're so quiet." Hardy did not immediately report Green's behavior; she explains that she thought if she kept talking to Green and asking him to respect her then the behavior would stop. According to Hardy, it did not.

On April 11, 2000, Hardy reported Green's behavior to Winston Atwater, Green's immediate supervisor.[1] Atwater met separately with both Hardy and Green to discuss the complaint and determined the complaint stemmed from "personal differences." Nevertheless, he counseled Green to communicate professionally with Hardy at all times and avoid inappropriate behavior. Green agreed to do so; however, Hardy claims the problems

---

[1] Atwater recalls a complaint from Hardy regarding "differences" Hardy was having with Green, but that Hardy did not complain about "sexual harassment" to him.

continued and she complained to Atwater again a few weeks later. Atwater attempted to schedule a meeting with both Hardy and Green to discuss the situation; neither Hardy nor Green could attend the first meeting and Hardy did not attend the second. She did not reschedule the meeting with Atwater and did not contact him again.

A few days later, on May 3, 2000, Hardy reported Green's alleged behavior to Tonya Harper at the University's Office for Access and Equity ("Access & Equity"), the University's department responsible for processing complaints of harassment. Hardy indicated that she was not prepared to provide a detailed account of her allegations at that meeting, so Harper gave Hardy a "Request for Further Action" form and instructed Hardy to submit it to Access & Equity as soon as she was able to provide additional information. Harper then reported Hardy's complaint to Clarence Bridges, Atwater's supervisor, who contacted Hardy and asked her why she had never contacted him directly and if she wanted him to arrange a meeting to help resolve the situation. Hardy said she would let him know, but did not follow up on his offer.

Hardy went on medical leave one month later in June 2000. In mid-to-late July 2000, she submitted to Access & Equity the "Request for Further Action" form, which detailed the events and actions involving Green that prompted her harassment complaint. Access & Equity investigated Hardy's allegations; it required Green to submit a written response to Hardy's allegation, and Harper interviewed Hardy, Green, and ten other individuals identified as having knowledge of Hardy's allegations. By October 2000, Harper prepared a detailed confidential report describing Access & Equity's investigation, the conclusions it reached, and its recommended

resolution of Hardy's allegations.[2] The investigation sub-stantiated some of the conduct Hardy alleged, but Access & Equity determined that Green's conduct did not rise to a level that violated the Board's sexual harassment pol-icy. Nevertheless, Green was given a written warning be-cause Access & Equity determined that some of his con-duct toward Hardy was inappropriate.

Hardy filed suit in federal district court in December 2000 alleging sexual harassment in violation of Title VII, and the University ultimately moved for summary judg-ment. The district court found there was a question of material fact regarding whether the alleged harassment constituted a hostile environment. However, it deter-mined that the University was entitled to an affirmative defense against liability, and thus summary judgment, because the University had exercised reasonable care to prevent and promptly correct any sexually harassing behavior and because Hardy had unreasonably failed to take advantage of the University's preventive and correc-tive measures. Hardy appeals the district court's ruling.

## II.  ANALYSIS

Summary judgment is appropriate if there is no gen-uine issue of material fact and the moving party is en-titled to judgment as a matter of law. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806 (7th Cir. 2000). We review summary judgment de novo, construing the record in the light most favorable to the non-movant—in this case, Hardy. *Id.* Hardy contends that the district court erred when it concluded that the University's sexual harassment policy provided a reasonable means of preventing and

---

[2]  Hardy was apprised of Access & Equity's findings and was given an opportunity to file written comments; she did not do so.

correcting sexual harassment, and that Hardy unreasonably failed to avail herself of the University's sexual harassment complaint procedures.

Title VII forbids any workplace discrimination with respect to "compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer may be subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 642 (7th Cir. 2000).[3] The Supreme Court has distinguished between hostile work environment cases in which the supervisor takes a tangible employment action against the subordinate and those in which the supervisor does not. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760-65 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *see also Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662, 666 (7th Cir. 2001); *Gentry v. Export Packaging Co.*, 238 F.3d 842, 846 (7th Cir. 2001); *Molnar v. Booth*, 229 F.3d 593, 599-600 (7th Cir. 2000); *Hill*, 218 F.3d at 642-43.

In the present case, the alleged harassment by Green did not lead to a tangible employment action against Hardy. A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761; *see*

---

[3]  The district court held that there were issues of material fact that precluded summary judgment on the question of whether Hardy was subjected to a hostile work environment. We need not address this issue because the University has not raised it on appeal.

*also Molnar*, 229 F.3d at 600 (citing *Ellerth*, 524 U.S. at 761); *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510-11 (7th Cir. 1999) (citing *Ellerth*, 524 U.S. at 761). Hardy was not terminated; she took medical leave in June 2000 and ultimately resigned in July 2001. The district court granted summary judgment to the University on her retaliation claim and she does not appeal that determination. Instead, Hardy alleges on appeal that she suffered the tangible employment action of constructive discharge. Her failure to raise this issue in the district court, however, waives it before this court. *Pond v. Michelin N. Am., Inc.,* 183 F.3d 592, 597 (7th Cir. 1999); *Hickey v. Chicago Truck Drivers, Helpers & Warehouse Workers Union*, 980 F.2d 465, 470 (7th Cir. 1992).

Therefore, under *Ellerth* and *Faragher*, the University is entitled to an affirmative defense against liability if it can show (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that Hardy failed to take advantage of any preventive or corrective opportunities provided by the University to otherwise avoid harm. *See Molnar*, 229 F.3d at 600 (citing *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807).

The first question we address is whether the University took reasonable care to prevent and correct sexual harassment. *See Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812 (7th Cir. 1999) ("the law does not require success—it only requires that an employer act reasonably to prevent sexual harassment"). There is no dispute that the University implemented a formal sexual harassment policy. *See Ellerth*, 524 U.S. at 764, 118 S.Ct. 2257 ("Title VII is designed to encourage the creation of antiharassment polices and effective grievance mechanisms."). Hardy argues that the policy was not reasonable enough to prevent sexual harassment because the reporting procedures were merely "suggestions," and the University did not adequately respond to her complaints. We disagree.

The University "suggests" various mechanisms by which employees can vet their grievances; it encourages employees who have experienced sexual harassment to report such harassment to Access & Equity, which is authorized to investigate complaints, issue findings, and make remedial recommendations. If employees wish to discuss an issue before taking action or if they feel they need supportive counseling, they are advised to contact the University's Counseling Service, the Employee Relations department in Human Services, the Employee Assistance Service, or the Office of Women's Affairs. The University's policy indicates that it wants an employee to use the procedure that the employee feels most comfortable pursuing. Hardy can point to no authority for her proposition that the University must "mandate" that employees utilize a specific procedure, and *Ellerth* and *Farragher* do not hold that an employers must do so. *See Ellerth*, 524 U.S. at 765 ("proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law"); *Farragher*, 524 U.S. at 807 (same). Moreover, there is no indication that the University's policy was ineffective or merely a disguised run-around; once Hardy complained to Access & Equity, the alleged harassment by Green ceased. Under these facts, no reasonable jury could find that the University did not take reasonable care to prevent sexual harassment and did not adequately respond to Hardy's complaint.

However, to satisfy the *Ellerth/Faragher* affirmative defense, the University must also show that Hardy unreasonably failed to avail herself of the University's procedures. The University argues that Hardy delayed in using the Board's complaint procedures and when she finally did so, she thwarted virtually every opportunity for those procedures to be effective, and the district court agreed. We find, however, that there is a question of material fact on this issue that precludes summary judg-

ment. Hardy waited only six weeks to contact Atwater about Green's behavior after trying to deal with Green directly to change his behavior, and what precise information she gave Atwater is in dispute. We cannot say as a matter of law that it was unreasonable for Hardy to wait until May 3, 2000, to report Green's behavior to Access & Equity, notwithstanding her previous experience with that office. While her report to that office was almost three months after Green's first alleged act of harassment, it was only eight days after his last and was only two weeks after Hardy's last report to Atwater. Similarly, it is a question for the trier of fact to determine the reasonableness of Hardy's delayed completion of the "Request for Action" form; she completed it the month after she went on medical leave and little more than two months after she received it, and it often takes time for employees to complete these forms because they want to ensure that all relevant information is included. Given these facts, and the standards set out in *Ellerth* and *Farragher*, the district court erred when it granted summary judgment to the University.

## III.  CONCLUSION

For the foregoing reasons, we REVERSE the decision of the district court granting summary judgment and REMAND for trial on the questions of whether there was a hostile work environment and whether Hardy unreasonably failed to avail herself of the University's sexual harassment reporting procedures.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*