Debra **DEBRUIN**, Plaintiff–Appellant,

v.

**APPLETON PAPERS, INCORPORATED**, Defendant–Appellee.

No. 02–4053.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 2003.

Decided July 3, 2003.

Before POSNER, COFFEY, and RIPPLE, Circuit Judges.

## ORDER

Debra DeBruin filed this action against her former employer, Appleton Papers. She alleged that she was terminated because of her sex in violation of Title VII of the Civil Rights Act of 1964.

After extensive discovery, Appleton moved for summary judgment. The district court granted the motion on the ground that Ms. DeBruin had not established that she was meeting Appleton's legitimate employment expectations. Ms. DeBruin now appeals. For the reasons set forth in this order, we affirm the judgment of the district court.

### I

### BACKGROUND

Ms. DeBruin worked at Appleton Papers for sixteen years and was eventually promoted to Director of the Credit and Finance Customer Service Department. Ms. DeBruin's performance reviews were consistently positive, although occasionally her superiors observed that she was an "emotional person" and, as a result, sometimes clashed with co-workers during meetings. Joint App. I at 202. Her superiors, however, never identified her emotionalism as a serious problem.

Ms. DeBruin began to encounter more serious difficulties after the appointment of Dale Parker as the chief financial officer of Appleton Papers in February 2000. Parker was her immediate supervisor. Shortly after he became CFO, Parker proposed reorganizing Ms. DeBruin's department by reassigning some of her responsibilities to her subordinate, Amy Werner. During one meeting with Ms. DeBruin, Parker outlined the suggested changes on an organizational chart. Ms. DeBruin alleges that Parker banged his fist on the table, pointed to the area of the chart that represented her remaining duties and said, "I want you to sit over here as the Queen of Sheba." Joint App. I at 131–32. Ms. DeBruin testified at her deposition that, given Parker's tone and the context of his remark, she interpreted "the Queen of Sheba" as a derogatory term for an assertive woman.

At some point, Parker became displeased with Ms. DeBruin to such an extent that he contemplated replacing her. Parker claims that, by late June 2000, he had become concerned by Ms. DeBruin's reluctance to discipline one of her subordinates. He also perceived Ms. DeBruin as working too hard and failing to maintain an appropriate balance between her work and her personal life. In addition, Parker had doubts about Ms. DeBruin's honesty, but the record does not clarify the basis for his concerns. Parker admits, however, that none of these issues proved as serious as he initially believed.

In late June, Beverly Stieber, a human resources representative, received complaints from three of Ms. DeBruin's subordinates—Amy Werner, Allison Harpel and Lisa Rottier—about Ms. DeBruin's managerial style. Werner, Harpel and Rottier characterized Ms. DeBruin as abusive, intimidating and domineering, and they claimed that she publicly criticized her employees, often brought them to tears when reprimanding them, and discouraged them from reporting problems to the human resources department. All three expressed to Stieber that they feared how Ms. DeBruin would react if she discovered that they had spoken with her. According to Stieber, Amy Werner broke down into tears while discussing Ms. DeBruin's behavior.

The record does not establish with any precision when Parker began to consider firing Ms. DeBruin or to what extent factors other than Werner's, Harpel's and Fottier's complaints influenced his decision. On June 23, Stieber wrote in an e-mail to Parker that she had discussed finding a replacement for Ms. DeBruin with her supervisor, Dave Badilla. According to Stieber, Badilla advised Parker to compose a written description of Ms. DeBruin's current position, including a list of qualifications. Parker responded by e-mail, asserting that he would put together the suggested job description. At the time of this e-mail exchange, however, Parker was unaware that Ms. DeBruin's subordinates had filed complaints about her with the human resources department.

Parker testified at his deposition that he recalled neither receiving nor responding to Stieber's e-mail regarding a replacement for Ms. DeBruin. He also stated that he did not remember having a discussion with Stieber before June 23 regarding the possibility of replacing Ms. DeBruin. Further, there is no evidence that Parker ever created the written job description referred to in Stieber's e-mail.

When Stieber informed Parker in mid-July that Werner, Harper and Rottier viewed Ms. DeBruin as an abusive supervisor, he directed Stieber to draft a memorandum detailing the substance of the complaints. Parker intended the memorandum as a warning letter to inform Ms. DeBruin of deficiencies in her performance and to threaten disciplinary action if she did not improve. Neither Parker nor Stieber investigated the complaints or asked Ms. DeBruin for her side of the story.

Parker met with Ms. DeBruin again on August 3 to discuss her performance and to give her the memorandum detailing his dissatisfaction with her managerial and interpersonal skills. Parker informed Ms. DeBruin that she must attend a Creative Center for Leadership ("CCL") seminar in September in order to improve her leadership skills. In addition, Parker ordered Ms. DeBruin to seek counseling with Appleton's employee assistance program. Parker warned Ms. DeBruin that she could be disciplined or terminated if she refused to attend the CCL seminar or failed to schedule her initial counseling session by August 15.

The memorandum shocked Ms. DeBruin, and she became distraught. Ms. DeBruin testified at her deposition that, when Parker saw how distraught she was, he commented that people on Wall Street often jump out of windows when they become upset: "... Dale started talking about when he had worked in New York. And he said, it brought back memories of when he worked in New York and how when people were upset they would jump from the building and commit suicide." Joint App. I at 161. Ms. DeBruin interpreted Parker's comment as a suggestion that she commit suicide. Less than two weeks later, Werner, Harpel and Rottier resigned. Parker fired Ms. DeBruin within days after receiving their resignations.

The record is not clear as to when Parker finally decided to terminate Ms. DeBruin. When Werner tendered her resignation on August 10, Stieber informed her that a decision to terminate Ms. DeBruin already had been made. Stieber, however, met with Ms. DeBruin on August 11 to help her prepare for the CCL seminar. Moreover, Parker claims that he did not make the final decision to terminate Ms. DeBruin until August 14. On August 16, Parker called Ms. Debruin, who was at home sick that day, and notified her that she was fired. Stieber subsequently met with Ms. DeBruin's subordinates and claims that they expressed relief that Ms.

DeBruin would no longer be supervising them.

Parker replaced Ms. DeBruin on an interim basis with Jay Vanderhoof, who worked in Appleton's Finance and Risk Management department. Vanderhoof was qualified for the position, although he did not have as much experience as Ms. DeBruin in bankruptcy and credit management. Eventually Vanderhoof was appointed as Ms. DeBruin's permanent replacement.

Ms. DeBruin filed this action, alleging that she had been fired because of her sex, not because of any deficiency in her managerial style. Appleton moved for summary judgment, arguing that it fired her because of her disrespectful behavior towards her subordinates. In response to Appleton's motion for summary judgment, Ms. DeBruin argued that she was indeed an effective manager and that her subordinates' complaints were not as serious as Parker and Stieber claimed. The district court, however, found that Ms. DeBruin could not make out a *prima facie* case of discrimination because she had not been meeting Appleton's legitimate employment expectations at the time of her termination. Ms. DeBruin filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), attempting to bolster her claim that she was an effective manager by attaching complete copies of certain depositions from which she had previously cited only excerpts. The court refused to consider this additional evidence because nothing had prevented Ms. DeBruin from submitting it when she responded to Appleton's motion for summary judgment. In any event, the court concluded, the newly submitted evidence did not change its view that Ms. DeBruin could not establish that she was meeting Appleton's legitimate expectations.

## II

## DISCUSSION

On appeal, Ms. DeBruin submits that the district court's conclusion that she did not make out a *prima facie* case of employment discrimination was erroneous. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We review the court's grant of summary judgment *de novo*, construing the record in the light most favorable to the non-movant in this case, Ms. DeBruin. *Hardy v. Univ. of Ill. at Chicago*, 328 F.3d 361, 364 (7th Cir.2003).

Ms. DeBruin first argues that the record establishes that she was meeting the expectations of her employer. She points to her history of positive performance reviews and emphasizes the most recent one, given in December 1999—only two months before Parker became CFO. However, a *prima facie* case of sex discrimination requires proof that the employee was performing at a satisfactory level at the time of her termination. *See Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 329 (7th Cir.2002); *Fortier v. Ameritech Mobile Comm. Inc.*, 161 F.3d 1106, 1113 (7th Cir.1998). That Ms. DeBruin's performance was satisfactory in December 1999 does not establish that it was satisfactory at the time she was discharged eight months later, in August 2000. *See Fortier*, 161 F.3d at 1113. By themselves, her past performance reviews are therefore insufficient for Ms. DeBruin to meet her burden of establishing that she was an effective manager. *Clay v. City of Chicago Dep't of Health*, 143 F.3d 1092, 1094–95 (7th Cir.1998); *Fortier*, 161 F.3d at 1113.

Ms. DeBruin also argues that Werner's, Harpel's and Fottier's depositions demonstrate that she was meeting Appleton's legitimate expectations. In their deposi-

**336**

tions, all three employees testified that, despite their complaints to management, they considered Ms. DeBruin a good manager who was often supportive of her employees. Ms. DeBruin also argues that the complaints of her abusiveness were exaggerated. She notes that, although the employees' affidavits depicted Ms. DeBruin as uniformly abusive and ineffective, their deposition testimony suggested otherwise. An examination of these documents does reveal inconsistencies between the employees' affidavits and their later deposition testimony. For instance, all three employees wrote in their affidavits that they left Appleton Papers because of Ms. DeBruin; but each testified later that Ms. DeBruin's behavior was not the primary reason for her resignation. In another instance, Harpel's deposition testimony directly contradicted her earlier assertions in her affidavit that Ms. DeBruin had ceased giving her developmental opportunities and had discouraged subordinates from proposing new ideas. Furthermore, all the employees had difficulty describing specific examples of Ms. DeBruin's abusiveness.

Ms. DeBruin does identify discrepancies between the affidavits of the employees who filed complaints against her and their deposition testimony. Arguably, these discrepancies provide a basis for inferring that the substance of the complaints was false and, therefore, that the complaints were pretextual for terminating Ms. DeBruin's employment. However, "in determining whether an employer's proffered reason for an employment action was pretextual, we are not concerned with the correctness or desirability of reasons offered for employment decisions, but rather the issue of whether the employer honestly believes in the reasons it offers." *Grayson v. O'Neill*, 308 F.3d 808, 820 (7th Cir.2002). Nothing in the record indicates that Parker did not give credence to the complaints at the time they were filed or that he was presented with evidence that would have warranted his believing that the reports were not true. Consequently, even if Ms. DeBruin did make out her *prima facie* case,[1] she is unable to establish that Appleton's legitimate, nondiscriminatory reason for terminating her was pretextual. *See, e.g., Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir.2002) (holding that a plaintiff can establish pretext only by showing that her employer's explanation is a lie).

Ms. DeBruin submits that Parker and Stieber's June 23 e-mail exchange regarding a search for her replacement raises an inference that Parker had decided to terminate Ms. DeBruin *before* he learned in mid-July of the complaints filed by Harpel, Werner and Fottier. Thus, Ms. DeBruin submits, Parker was lying when he offered the employee complaints as the primary basis for terminating her.

We cannot accept this argument. The e-mail exchange does not establish that Parker was lying. The most we can infer from the e-mail is that Parker had developed reservations about Ms. DeBruin's effectiveness before learning of the complaints filed against her. Whatever the accuracy of those reservations, there is no evidence that they had a discriminatory basis. Furthermore, no matter what Parker thought about Ms. DeBruin before he learned of the complaints, he did not make the decision to terminate her until after he learned of the complaints and the subse-

1. Ms. De Bruin also argues that she fulfilled the fourth prong of the *McDonnell Douglas* test by establishing that she was replaced by a male employee who had less experience than she. Although we have reservations as to whether she has met her burden under the circumstances presented here, we need not decide the matter definitively. *See Leffel v. Valley Fin. Serv.*, 113 F.3d 787, 794 (7th Cir. 1997).

quent resignations of Werner, Harpel and Rottier.

The discrepancies between Werner's, Harpel's and Rottier's deposition testimony and their affidavits cannot, of course, establish pretext. These discrepancies did not emerge until discovery, and Ms. DeBruin does not dispute that Werner, Harpel and Rottier actually filed the complaints upon which Parker relied in making his decision. At the time, Parker made his decision to terminate Ms. DeBruin, he had no reason to doubt the substance of the complaints, and we see no reason why he would not have been justified in relying on them.

For these reasons, we must affirm the judgment of the district court.

AFFIRMED