**Nick EPISCOPO, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellee.**

**No. 04–2079.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 2005.

Decided Feb. 7, 2005.

Jason W. Bruce, Chicago, IL, for Plaintiff–Appellant.

Sara E. Lorber, Holland & Knight, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and EVANS, Circuit Judges.

## ORDER

Nick Episcopo, a naturalized citizen of the United States who was born in Italy, worked for General Motors ("GM") for more than 30 years. He sued GM claiming, as relevant to this appeal, that for much of that time he endured a hostile work environment because of his national origin. This claim and several others in Mr. Episcopo's complaint were resolved against him at summary judgment. He now appeals on the sole basis that the district court erred in rejecting his claim of a hostile work environment. For the reasons set forth in this order, we affirm the judgment of the district court.

## I

## BACKGROUND

We recite the facts in the light most favorable to Mr. Episcopo, the non-moving party.

Mr. Episcopo was hired as a machinist in GM's Electro–Motive Division in 1969 and worked in similar positions in the same facility throughout his career. Although, in his view, the workplace was always somewhat hostile, this suit focuses on the period from 1995 to 2001.

Mr. Episcopo recounts an incident that occurred in 1995, shortly after the bombing of the Alfred E. Murrah Building in Oklahoma City. On that occasion, he heard fellow employees in the presence of a supervisor referring to immigrants as "_____ Displaced Persons." Mr. Episcopo could not identify the speaker, and the conversation was not addressed to him; nor did it have anything to do with him as far as he knew, but it made his "blood start boiling." He confronted his coworkers and initiated a shouting match.

The supervisor who was present at the confrontation, Gerry Hanley, was not Mr. Episcopo's boss at the time. From then on, however, he sought to make things difficult for Mr. Episcopo. Hanley monitored how long Mr. Episcopo spent in the washroom, and he reported the most minor of Mr. Episcopo's deviations from company rules and norms. However, Hanley seems to have largely avoided giving racial or ethnic offense to anyone. Only twice in the record is an ethnically objectionable comment even attributed to him. The first instance was when he admitted at his deposition that he might at some time have used the phrase "displaced persons"; the other was when he protested on learning

of Mr. Episcopo's allegations before the EEOC that he had no idea whether Mr. Episcopo was "a pizza maker or a pizza deliverer."

Mr. Episcopo also suggests that Hanley encouraged another hourly employee, Greg Monczynski, to harass and intimidate him. On one occasion Monczynski asked Mr. Episcopo whether Columbus Day was an Italian holiday. There also was name calling. Mr. Episcopo estimated that Monczynski called him "wop" or "dago" 30 to 50 times between 1995 and Hanley's retirement in 2001. All of Mr. Episcopo's coworkers who provided evidence admitted, however, that ethnically demeaning expressions were commonly a part of the workplace banter. One employee, who was of Italian descent although born in the United States, testified at his deposition that he had been called "wop" and "dago," but was not offended "because most of the time they're joking around." The same employee recalled that Mr. Episcopo himself used the terms "wop," "dago," and "polak."

Monczynski's ethnic slurs account for only a small portion of a broad pattern of claimed harassment. According to Mr. Episcopo, Monczynski also tried to hit, or threatened to hit, Mr. Episcopo's car with his own car; scattered sunflower seeds over Mr. Episcopo's work area; stared at Mr. Episcopo; raised his eyeglasses with his middle finger; laid out his glove with the middle finger pointed toward Mr. Episcopo; drew a swastika on the paper-towel dispenser that Monczynski kept on his tool box; and kicked Mr. Episcopo's empty chair away from the aisle. In fact, Mr. Episcopo and Monczynski regularly complained about each other to Hanley and to their union representative, though neither filed a formal complaint.

In 1997, Mr. Episcopo fractured his wrist on the job. As a result, he required surgery on his left rotator cuff in April 1999 and on his right rotator cuff in January 2000. Mr. Episcopo testified at his deposition that these operations left him unable to lift more than ten pounds or to lift anything above the level of his chest. This perceived disability, by his estimate, kept him from performing 30 percent of the tasks in his job description. He wanted GM's plant physician permanently to release him from these tasks, but the physician refused.

By coincidence, Hanley became Mr. Episcopo's direct supervisor in March 2000, around the time Mr. Episcopo returned to work after his second surgery. Mr. Episcopo accused Hanley of influencing the physician's decision. However, for a short period, Mr. Episcopo did receive temporary medical restrictions from the plant physician, which, in Mr. Episcopo's view, Hanley refused to respect. At first, Mr. Episcopo was placed on a ten-pound restriction, but Hanley told him he could not find work for him. When Mr. Episcopo returned to the plant physician and obtained a 30–pound restriction, Hanley did find jobs for him, but he began "slowly pushing jobs over the 30 pounds." Mr. Episcopo says that Hanley gave him jobs that exceeded his weight restrictions "dozens of times."

In November 2000, Mr. Episcopo filed a charge of discrimination with the EEOC. He alleged that he was the victim of a hostile work environment and disparate treatment because of his national origin, and that he also suffered discrimination because of his on-the-job injury. Then, in January 2001, he filed a grievance using GM's internal procedures in which he claimed that the medical department was wrongfully withholding medical restrictions. He said nothing in this grievance about harassment based on his national origin. GM investigated and concluded

that Mr. Episcopo was fully able to perform his job without restrictions. However, Mr. Episcopo went on medical leave in September 2002 and then two months later filed this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e–17; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101–12213; and 42 U.S.C. § 1981. He voluntarily retired from GM in January 2003 when his eligibility for medical pay expired.

GM moved for summary judgment. It contended that the "racial" comments made by Monczynski and Hanley were neither severe nor pervasive enough to establish a hostile work environment, and that most of the purported harassment had nothing to do with Mr. Episcopo's national origin. The company also claimed entitlement to an affirmative defense to liability because it had procedures in place for reporting harassment that Mr. Episcopo had failed to use. In response to GM's motion, Mr. Episcopo protested that GM had unduly narrowed his claim of a hostile work environment, which Mr. Episcopo then defined as embracing virtually every unfavorable event within the limitations period, including Hanley's assignment of jobs allegedly "designed to aggravate" Mr. Episcopo's shoulder condition. With respect to the affirmative defense, Mr. Episcopo argued that GM was chargeable with knowledge of Monczynkski's conduct, that the failure of the anti-harassment policy to prevent or correct Hanley's claimed harassment was evidence that the policy had not been enforced and that it was disingenuous for GM to assert that Mr. Episcopo had never used its reporting procedures when in fact he had complained to his union representative.

## II

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. *McPherson*

*v. City of Waukegan*, 379 F.3d 430, 437 (7th Cir.2004). Mr. Episcopo is entitled to have all facts and inferences construed in his favor because the decision at summary judgment was against him. *Id.* However, we need not parse the district court's entire analysis of the hostile work environment claim because GM's affirmative defense is dispositive of his contentions.

The parties agree that a vicarious liability standard is appropriate because the substance of Mr. Episcopo's complaint is that a company supervisor, Hanley, was responsible for the claimed hostile work environment. *See McPherson*, 379 F.3d at 439–40 (holding that the employer is strictly liable when the harasser is the employee's supervisor, subject to an affirmative defense). Because Mr. Episcopo does not argue that any tangible employment action was taken against him, GM is entitled to demonstrate that it qualifies for the affirmative defense to liability established in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). *See Pa. State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 2346, 159 L.Ed.2d 204 (2004); *McPherson*, 379 F.3d at 440. These cases require an employer to establish that it took all reasonable steps to prevent and redress harassment covered by Title VII and that the plaintiff unreasonably failed to take advantage of opportunities to prevent or correct the harm. *McPherson*, 379 F.3d at 439. Ordinarily, it will suffice for the employer to prove that it has an effective policy for responding to charges of harassment, and that the plaintiff unreasonably failed to take advantage of the policy. *See Suders*, 124 S.Ct. at 2346.

It is undisputed that GM had a longstanding policy against harassment on

the basis of national origin. Likewise, it is undisputed that the policy was communicated to employees, including Mr. Episcopo, who utilized it to complain about discrimination in 1977. Mr. Episcopo, argues, however, that GM never offered evidence that its policy was *effective.*

We have said that "mere creation" of a policy without more is insufficient to establish that the employer complied with its obligations under Title VII, *see Gentry v. Export Packaging Co.,* 238 F.3d 842, 847 (7th Cir.2001), but there is no legitimate dispute in this case about the efficacy of the policy put in place by GM. *Cf. Faragher,* 524 U.S. at 808–09 (finding a policy ineffective where the employer failed to disseminate it, and where employees and supervisors were too isolated to be monitored by higher level employees); *Gentry,* 238 F.3d at 847–48 (premising ineffectiveness on the employer's failure to designate a person to receive complaints of harassment). All Mr. Episcopo really says is that GM's policy was ineffective because it failed him, but anti-harassment efforts need not succeed in order to be reasonable. *See Hardy v. Univ. of Ill. at Chicago,* 328 F.3d 361, 365 (7th Cir.2003); *Shaw v. AutoZone, Inc.,* 180 F.3d 806, 812 (7th Cir.1999). He suggests no defect in the policy itself or in its implementation that could support a claim that GM failed in its duty to prevent harassment.

If Mr. Episcopo means to suggest that the company failed in its duty to correct because it had constructive notice that he was being harassed, *see McPherson,* 379 F.3d at 441, we are not persuaded. It is not enough for the plaintiff to show that the harassment was repetitive; it must also have been obvious, such that there is a clear implication that the company either did know of the harassment or only failed to know because it was neglecting its duty to properly monitor its employees. *See*

*Wilson v. Chrysler Corp.,* 172 F.3d 500, 509 (7th Cir.1999) (finding constructive notice where harassment was "public and deliberately exhibitionist"). Here, Mr. Episcopo's entire claim against Hanley depends upon the assertion of a hidden animus. And Mr. Episcopo only complained of one comment made by Monczynski relating to his national origin. We have held that one isolated incident is not enough to put a company on notice of a hostile work environment, *see McPherson,* 379 F.3d at 441. Mr. Episcopo voiced vague complaints about his problems with Monczynski and Hanley to several people, including some of the higher level management at the plant, but the mere fact that there are many complaints will not suffice to put the employer on notice of harassment. *See Durkin v. City of Chicago,* 341 F.3d 606, 613 (7th Cir.2003). No particular words need be used to claim harassment, *see Gentry,* 238 F.3d at 849 (holding that plaintiff did not have to use the expression "sexual harassment" as long as the behavior she described was recognizable in those terms), but the employer will not be on notice unless the plaintiff finds some way to communicate facts that would support a claim of a hostile work environment, *id.* Where, as here, the plaintiff claimed to know facts the employer did not know, he cannot survive summary judgment unless he can show that he reported the harassment. *See McPherson,* 379 F.3d at 441 n. 7; *Durkin,* 341 F.3d at 612.

Finally, we agree with the district court that Mr. Episcopo did not submit any evidence to dispute GM's contention that he unreasonably failed to make use of GM's anti-harassment policy. He never communicated to anyone in a position of authority to act for GM that he was being harassed on the basis of his national origin. Mr. Episcopo argues that his failure to do so was not unreasonable because he tried to get his union representative to file a griev-

ance. He may have been legitimately discouraged by the union representative's failure to champion him, but such a situation will not excuse him from his obligation to report. *See Durkin*, 341 F.3d at 612 (holding that plaintiff was required to report harassment even though she believed that it would be futile). Nor can he argue that he was hoping to persuade his representative to act. After a certain period of time a plaintiff may not reasonably depend on another to transmit his grievance.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED